AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico ▾

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>1964 Piper PA-24-250 aircraft, serial number<br>24-3660, tail number N8404P | )<br>)<br>)<br>)<br>) |

Case No.  **23 MR 617**

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of
_____New Mexico_____ is subject to forfeiture to the United States of America under ___18___ U.S.C. §
_981(a)(1)(A)_ *(describe the property)*:
1964 Piper PA-24-250 aircraft, serial number 24-3660, tail number N8404P, and all accompanying apparatus to include keys, logbooks, and operating manuals/handbooks, which are subject to forfeiture pursuant to 18 USC §§ 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1).

The application is based on these facts:
See attached affidavi, submitted by FBI Special Agent Robert Balint and approved by AUSA Taylor Hartstein

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Special Agent Robert T. Balint, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by being telephonically sworn and electronically signed.

Date: _March 20, 2023_

_____
*Judge's signature*

City and state:  _Albuquerque, New Mexico_

Honorable John F. Robbenhaar, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR SEIZURE WARRANT

I, Special Agent Robert T. Balint, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed in this capacity since December 2020.  I am currently assigned to the Albuquerque Division, White Collar Crime Squad, and my primary investigative responsibilities include investigating complex financial crimes.  Throughout my career as a Special Agent with the FBI, I have conducted investigations involving financial crimes to include cases involving wire fraud and theft from the United States Government.

2.      The information set forth in this Affidavit was derived from my own investigation and/or communicated to me by other law enforcement professionals, and from records and documents that I, and others, have reviewed.  I have not included every fact known to me concerning the investigation.  I have set forth only the facts that I believe are necessary to demonstrate probable cause for the issuance of the requested Seizure Warrant.

3.      Based on my training and experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that violations of Title 18 United States Code §§ 1343, 1344, 1349, 1956 and 1957 have been committed or facilitated by Leonard Vandenberg and Christy Vandenberg.

4.      From 2020-2022, Christy Vandenberg and/or Leonard Vandenberg (the Vandenbergs) applied for and received approximately $3,145,700.00 in Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) loans made available in response to

1

the Covid-19 pandemic.  The terms and conditions of these loans required that the funds be used

for payroll and operating expenses for businesses controlled by the Vandenbergs.  Information

developed over the course of FBI's investigation indicates that the Vandenbergs instead

transferred a substantial amount of the loan proceeds to multiple personal financial trading

accounts for personal gain.  From approximately March 2020 to approximately September 2022,

the combined value of the brokerage accounts in the Vandenbergs' personal names identified

below grew to approximately $3,066,239.88.  As of December 2022, the combined value of

brokerage accounts in the Vandenbergs' personal names and/or in the Vandenbergs' custody

identified below was approximately $2,888,140.72.  I submit that, based on the facts outlined in

this Affidavit, there is probable cause to believe that the Vandenbergs knowingly included

materially false representations and pretenses in the application materials and loan forgiveness

materials they submitted to the Small Business Administration and third-party lenders in

connection with the PPP and EIDL loans they received, in violation of 18 U.S.C. §§ 1343, 1344,

and 1349.  I further submit that there is probable cause to believe that the actions undertaken by

the Vandenbergs in connection with these loans amounted to a scheme to defraud and money

laundering in violation of Title 18 United States Code §§ 1343, 1344, 1349, 1956 and 1957.

## **PROPERTY FOR SEIZURE**

5.      I make this Affidavit in support of Applications for a Seizure Warrant for the

property contained in the following accounts and items:

> a.  All funds, monies, securities, and/or financial instruments contained within TD
>
> Ameritrade Joint Tenants with Rights of Survivorship account ████ 5235 in the
>
> name of Leonard C. Vandenberg and Christy J. Vandenberg, with signers Leonard

C. Vandenberg and Christy J. Vandenberg.[1]

b. All funds, monies, securities, and/or financial instruments contained within TD Ameritrade Joint Tenants with Rights of Survivorship account # ███ 8240 in the name of Leonard C. Vandenberg and Christy J. Vandenberg, with signers Leonard C. Vandenberg and Christy J. Vandenberg, with investment advisor Fisher Investments.

c. All funds, monies, securities, and/or financial instruments contained within TD Ameritrade individual account # ███ 3730 in the name of Leonard C. Vandenberg, with signer Leonard C. Vandenberg.

d. All funds, monies, securities, and/or financial instruments contained within TD Ameritrade Minor Individual Retirement Account (IRA) ███ 8585 in the name of B.V. and custodian Leonard C. Vandenberg, mailing address ███ ███

e. All funds, monies, securities, and/or financial instruments contained within TD Ameritrade Minor Individual Retirement Account (IRA) ███ 1306 in the name of D.V. and custodian Leonard C. Vandenberg, mailing address ███ ███

f. All funds, monies, securities, and/or financial instruments contained within TD Ameritrade Minor Individual Retirement Account (IRA) ███ 7971 in the name of B.V. and custodian Leonard C. Vandenberg, mailing address ███,

---

[1] The names on the documents are sometimes inconsistent as to the use of a middle initial and whether or not punctuation is used with the middle initial. For consistency in this Affidavit, whenever a middle initial appears, it is followed by a period whether or not such punctuation was used in the actual records.

██████████████ .

g.  All funds, monies, securities, and/or financial instruments contained within TD Ameritrade Minor Individual Retirement Account (IRA) ███ 8295 in the name of J.V. and custodian Leonard C. Vandenberg, mailing address ████████ ██████████████

h.  1964 Piper PA-24-250 aircraft, serial number 24-3660, tail number N8404P, registered to Leonard Vandenberg and Christy Vandenberg, and all accompanying apparatus to include keys, logbooks, and operating manuals/handbooks.

## RELEVANT SEIZURE AND FORFEITURE AUTHORITY

6.  I assert that, based upon the facts detailed in this Affidavit, probable cause exists to believe the aforementioned property listed in paragraph 5 constitutes evidence of, proceeds (i.e., fruits) of, and property designed for use, intended for use, or used in, violations of Title 18 U.S.C. §1343 (Wire Fraud), Title 18 U.S.C. §1344 (Bank Fraud), Title 18 U.S.C. §1349 (Conspiracy), Title 18 U.S.C. § 1956 (Laundering of Monetary Instruments), and Title 18 U.S.C. §1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).  *See* Fed. R. Crim. P. 41(c)(1)-(3).  Additionally, the property listed in paragraph 5 is subject to civil forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(A) and (C) because it represents proceeds of, property involved in, and/or property traceable to violations of 18 U.S.C. §§ 1343, 1344, 1349, 1956 and 1957.

7.  Civil forfeiture authority for the abovementioned violations exists under the following:

a.  Title 18 U.S.C. § 981(a)(1): "The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or

attempted transaction in violation of section **1956**, **1957** or 1960 of this title, or any property traceable to such property."  (emphasis added).

  b.  Title 18 U.S.C. § 981(a)(1)(C): "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or **1344** of this title or **any offense constituting a 'specified unlawful activity'** (as defined in section 1956(c)(7) of this title), or a **conspiracy to commit such offense**."[2] (emphasis added).

8.  Title 18 U.S.C. § 982 provides for criminal forfeiture of certain property upon conviction for violations of 18 U.S.C. §§ 1343, 1344, 1349, 1956 and 1957.  Regarding sections 1956 and 1957, "[t]he court, in imposing sentence on a person convicted of an offense in violation of section **1956**, **1957**, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1) (emphasis added).  Furthermore, if a person is charged in a criminal case with an offense for which the civil or criminal forfeiture of property is authorized, the government may include notice of the forfeiture in an indictment or information and, if the defendant is convicted of the offense giving rise the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case.  *See* 28 U.S.C. §

---

[2] 18 U.S.C. § 1956(c)(7)(A) includes as a "specified unlawful activity" "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31."  Section 1961(1) specifically lists "**section 1343** (relating to wire fraud)" and "**section 1344** (relating to financial institution fraud)."  (emphasis added).

2461(c).  If the property identified in paragraph 5 is subject to civil forfeiture under 18 U.S.C. §

981(a)(1)(C), therefore, it is also subject to forfeiture in a criminal case by operation of 28

U.S.C. § 2461(c).

## RELEVANT CRIMINAL STATUTES

9.      Title 18 U.S.C. § 1343 provides the following:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication, in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds, for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years or both.  If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency . . . or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

10.     Title 18 U.S.C. § 1344 provides the following:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

11.     Title 18 U.S.C. § 1349 provides the following:

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

12.     Title 18 U.S.C. § 1956(a)(1) provides the following:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . (B) knowing that the transaction is designed in whole or in part— (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the

property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

13.     Title 18 U.S.C. § 1956(h) states that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

14.     Title 18 U.S.C. § 1956(c)(9) defines "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."

15.     Title 18 U.S.C. § 1957(a) provides that "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)."  Subsection (d) provides, in relevant part, that "[t]he circumstances referred to in subsection (a) are—(1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States."

## BACKGROUND ON CARES ACT, PAYCHECK PROTECTION PROGRAM (PPP) LOANS, AND ECONOMIC INJURY DISASTER LOANS (EIDL)

16.     In March 2020, the Coronavirus Aid, Relief and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families and organizations affected by the COVID-19 emergency.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.  Among its various provisions, the CARES Act authorized the Small Business Administration (SBA) to guarantee Paycheck Protection Program (PPP) loans, the full principal amount of which could qualify for forgiveness.  The CARES Act authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses.

Additional PPP funding was authorized in legislation enacted on or about December 27, 2020 and March 11, 2021.

17.     The PPP permitted participating third-party lenders to approve and disburse loans to small businesses for "covered expenditures" including payroll costs[3] and certain expenditures on mortgage interest payments, rent, utilities, operations expenditures, property damage costs, supplier costs, and worker protection expenditures.[4]   Although PPP loans were funded by the third-party lenders, the loans were fully guaranteed by the SBA, meaning that in the event of a default, the SBA agreed to fully satisfy the lender for any balance remaining on the loan.   The CARES Act also provided for the SBA to forgive any loan up to 100 percent if the borrower established that it utilized at least 60 percent of the loan proceeds for payroll costs in the 24-week period following loan disbursement and the remaining portion of the loan proceeds, up to 40 percent, for "covered expenditures."   The CARES Act provided for any loan proceeds not spent on payroll costs and "covered expenditures" to be serviced as a loan and ultimately repaid.

18.     The terms of PPP loans did not permit loan proceeds to be used for non-business expenses.   Such unauthorized expenses would include the purchase of consumer goods unrelated to business operations, paying personal debts such as residential mortgage payments and

---

[3] As described in the CARES Act, payroll costs include compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

[4] The final four types of expenses in this list (starting with "operations expenditures") were designated as "covered expenditures" starting January 6, 2021, when the scope of such expenditures was expanded by the Economic Aid Act.

automobile loan payments, purchasing automobiles or other vehicles for personal use, making personal investments (including the purchase of assets like securities or cryptocurrency), and funding the retirement accounts of individuals not associated with the borrower's business. Knowing misuse of PPP funds subjected the borrower to additional liability, such as charges for fraud.

19.     The SBA promulgated regulations concerning eligibility for a PPP loan.  To apply for a PPP loan, potential borrowers were required to electronically submit the SBA Form 2483, "Paycheck Protection Program Borrower Application Form" with supporting payroll documentation to a financial institution that administered the loan and served as custodian of the funds.  On the SBA Form 2483, an authorized representative had to make several certifications about the borrower business's operations and related information.  Those certifications included that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.  Potential borrowers also had to provide information including the average monthly payroll expenses of the business and the number of employees it had.  Upon submitting the SBA Form 2483, the authorized representative had to certify that, should he or she knowingly use the PPP funds for unauthorized purposes, the United States could hold him or her legally liable, including by charging him or her criminally for fraud.

20.     The maximum available PPP loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act.  The payroll-based formula principally considered the borrower's aggregate payroll costs from the preceding

twelve months for all domestic employees.[5]  Once an average monthly payroll cost was

established, the borrower multiplied that amount by 2.5 to arrive at the total maximum PPP loan

amount.

21.     Additionally, the applicant had to respond to questions regarding his or her

personal history, including whether he or she had been convicted of a felony and/or placed on

probation within the previous five years.  The PPP loan application expressly stated that, should

the applicant respond "yes," the PPP loan would "not be approved."  The applicant also had to

certify the truth and accuracy of any information provided on the SBA Form 2483 and in all

supporting documents.  Such supporting documents could include tax filings with the Internal

Revenue Service (IRS), such as the IRS Form W-3, "Transmittal of Wage and Tax Statements";

IRS Form 940, "Employer's Annual Federal Unemployment Tax Return"; or IRS Form 941,

"Employer's Quarterly Federal Tax Return," as well as other documents such as payroll

processor records, bank records, or other records demonstrating qualified payroll expenses.

22.     Finally, the applicant had to certify his or her understanding of the following

warning regarding false statements and other criminal penalties:

> I realize that knowingly making a false statement to obtain a guaranteed
> loan from SBA is punishable under the law, including under 18 U.S.C.
> §§ 1001 and 3571 by imprisonment of not more than five years and/or a
> fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not
> more than two years and/ or a fine of not more than $5,000; and, if
> submitted to a federally insured institution, under 18 U.S.C. § 1014 by
> imprisonment of not more than thirty years and/or a fine of not more than
> $1,000,000.

23.     After a third-party lender funded a PPP loan to the borrower, the lender submitted

---

[5] The payroll-based formula set out in the CARES Act expressly excludes (i) any compensation
of an employee whose principal place of residence is outside of the United States; and (ii) the
compensation of an individual employee in excess of an annual salary of $100,000, prorated as
necessary.

disbursement details into the SBA E-Tran system with servers located in Sterling, VA.  The

SBA's Denver Finance Center, located in Denver, Colorado, created payment files and

authorized payments of the PPP processing fee to the lender through the US Treasury's Financial

Management System (FMS).  The primary server for the FMS is in Sterling, VA.  The PPP

processing fee varied depending on the amount of the loan.  Once created, the payment files were

then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri, which

would, in turn, send instructions for payment of funds to the Federal Reserve Bank ACH

processing site in East Rutherford, New Jersey.

24.     The PPP program ended on May 31, 2021.

25.     The Economic Injury Disaster Loan (EIDL) program is an SBA program that

provides low-interest financing to small businesses, renters, and homeowners in regions affected

by declared disasters.

26.     The CARES Act and subsequent legislation, enacted between on or about

December 27, 2020, and on or about March 11, 2021, allocated billions of dollars in COVID-

related EIDL funding.  The CARES Act and subsequent legislation also authorized the SBA to

provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial

disruptions due to the COVID-19 pandemic.  In addition, the CARES Act and subsequent

legislation authorized the SBA to issue advances of up to $10,000 to small businesses within

three days of applying for an EIDL.

27.     To obtain an EIDL, which in some cases included an advance, a qualifying

business had to submit an application to the SBA and provide information about its operations,

such as the number of employees, gross revenues for the 12-month period preceding the disaster,

and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for

COVID-19 relief, the 12-month period was that preceding January 31, 2020.  The applicant also had to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

28.     All EIDL applications were submitted online.  All EIDL applications submitted on or after July 11, 2020 were handled by an SBA contractor with servers located in Des Moines, Iowa.  Prior to July 11, 2020, EIDL applications were submitted through three different servers located in Boydton, Virginia, West Des Moines, Iowa, and Quincy, Washington.  Whether the EIDL loan would be approved and for what amount were determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.

29.     Once an SBA EIDL application was approved, the SBA's Denver Finance Center,[6] located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications.  The disbursement of the EIDL funds were transmitted by the Financial Management System to the Treasury and then to the recipient's bank account.  The primary server for the FMS is in Sterling, Virginia.

30.     Any funds issued under an EIDL, including grants and advances, were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

31.     SBA's website describes authorized uses of EIDL proceeds as follows: "Working capital to make regular payments for operating expenses, including payroll, rent/mortgage,

---

[6] Denver Finance Center, OCFO, SBA, 721 19th Street, Suite 373, Denver, CO 80202.

utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future)."  The terms of EIDL loan documents do not permit the use of EIDL funds for non-business purposes.  Such unauthorized expenditures would include the purchase of consumer goods unrelated to business operations, paying personal debts such as residential mortgage payments and automobile loan payments, purchasing automobiles or other vehicles for personal use, making personal investments (including the purchase of assets like securities or cryptocurrency), and funding the retirement accounts of individuals not associated with the borrower's business.  Knowing misuse of EIDL funds subjected the borrower to additional liability, such as charges for fraud.

32.     Borrowers applying for EIDL loans and modifications were required to submit an executed Loan Authorization and Agreement (LA&A) form in connection with each EIDL loan and modification.  This form indicated that "[a] properly signed document [i.e., the LA&A] is required <u>prior</u> to any disbursement."  The LA&A also contained various representations, including representations regarding authorized uses of the loan proceeds, to which borrowers were required to agree prior to any loan disbursement.

<u>**PROBABLE CAUSE**</u>

33.     Leonard Vandenberg and Christy Vandenberg, residents of New Mexico and/or Texas, collectively caused at least two PPP and three EIDL COVID relief loan applications to be submitted with financial institutions and with the SBA between 2020 and 2022.  The loan applications were made in the names of various companies.

34.     These loan applications were approved and the loans were funded for a total of approximately $3,145,700.00 with the loan proceeds being directed to three bank accounts at James Polk Stone Community Bank (JP Stone) and two bank accounts at City Bank.[7]

35.     JP Stone is a lender that disbursed PPP loan funds to bank accounts controlled by Leonard Vandenberg and Christy Vandenberg.  The loan agreements appear to have been signed by Leonard Vandenberg and Christy Vandenberg.

36.     A search of the New Mexico Secretary of State Corporations and Business Services and Texas Comptroller of Public Accounts revealed corporate records exist for the companies that applied for COVID relief loans.  More specifically:

   a.  Corclyn Enterprises Inc. was organized in New Mexico on or about May 4, 2000 and lists Leonard Vandenberg as the Registered Agent.  Leonard Vandenberg is listed as President and Director, and Christy Vandenberg is listed as Secretary.

   b.  LCV Real Estate LLC was organized in New Mexico on or about April 26, 2018 and lists Leonard Vandenberg as the Registered Agent, Organizer, and Member.  Christy Vandenberg is listed as a Member.

   c.  SDGTEX Restaurants Inc. was registered in Texas on or about February 14, 2008 and lists Leonard Vandenberg as president and director and Christy Vandenberg as vice president and director.  National Registered Agents, Inc. is listed as the agent.

---

[7] A chart summarizing the disposition of the COVID relief loan proceeds is attached as Exhibit 1A.  A chart summarizing the bank accounts and trading accounts described in this Affidavit is attached as Exhibit 1B.  A chart providing a visual depiction of the flow of funds is attached as Exhibit 1C.

37.     As explained herein, Corclyn Enterprises Inc. and SDGTEX Restaurants Inc. are associated with restaurants in various locations in New Mexico and Texas all operating under the name Something Different Grill.  An open-source search found that there are approximately seven Something Different Grill restaurants with locations in Clovis, NM; Portales, NM; Levelland, TX; Muleshoe, TX; and Lubbock, TX. An open-source search did not yield any online presence for LCV Real Estate LLC.

### Loan Applications Submitted to SBA and JP Stone by Leonard Vandenberg and Christy Vandenberg

38.     In support of the loan applications, certain documentation was provided to the SBA and financial institutions that processed the loans.  The investigation has obtained records from the SBA and from various financial institutions.  The following paragraphs demonstrate that the PPP and EIDL loan application materials submitted to third-party lenders and the SBA by Leonard Vandenberg and Christy Vandenberg on behalf of their business entities contained materially false and/or fraudulent pretenses and representations.  The same is true of the loan forgiveness applications submitted in connection with the PPP loans.

*PPP Loan Number 346009 Funded on April 17, 2020 (Exhibit 1A Reference #1)*

39.     Records obtained from JP Stone show that Leonard Vandenberg and Christy Vandenberg applied for a PPP loan on or about April 2, 2020, obtaining loan proceeds for Corclyn Enterprises Inc. dba Something Different Grill in the amount of approximately $300,000.00 from JP Stone.  In signing the loan application, Leonard Vandenberg and Christy Vandenberg agreed the loan proceeds would be used "only for the business-related purposes as specified in the loan application."

40.     The PPP Loan Application Form is attached as Exhibit 2.  Certifications that the applicant must initial include "The funds will be used to retain workers and maintain payroll or

make mortgage payments, lease payments, and utility payments; I understand that if the funds

are used for unauthorized purposes, the federal government may pursue criminal fraud charges."

Exhibit 2 at 2.

41.     According to a PPP Loan Forgiveness Application Form 3508EZ, Leonard

Vandenberg applied for loan forgiveness on or about November 27, 2020.  The PPP loan

forgiveness application is attached as Exhibit 3.

42.     The PPP Loan Forgiveness Application Form contains the following

representations, among others:

> The dollar amount for which forgiveness is requested:
> - was used to pay costs that are eligible for forgiveness (payroll costs to
>   retain employees; business mortgage interest payments; business rent
>   or lease payments; or business utility payments);
> - includes payroll costs equal to at least 60% of the forgiveness amount;
>
> ***
>
> I understand that if the funds were knowingly used for unauthorized purposes,
> the federal government may pursue recovery of loan amounts and/or civil or
> criminal fraud charges.
>
> ***
>
> The Borrower has accurately verified the payments for the eligible payroll and
> nonpayroll costs for which the Borrower is requesting forgiveness.
>
> ***
>
> The Borrower was unable to operate between February 15, 2020, and the end
> of the Covered Period at the same level of business activity as before February
> 15, 2020 due to compliance with requirements established or guidance issued
> between March 1, 2020 and December 31, 2020, by the Secretary of Health
> and Human Services, the Director of the Centers for Disease Control and
> Prevention, or the Occupational Safety and Health Administration, related to
> the maintenance of standards of sanitation, social distancing, or any other
> work or customer safety requirement related to COVID-19.

Exhibit 3 at 2.  These representations appear to have been individually certified (by initials) by Leonard Vandenberg.  Leonard Vandenberg also signed the PPP Loan Application Forgiveness Form as the authorized representative of the borrower.  *Id.*

43.    Records obtained from JP Stone indicate that the PPP loan was forgiven in part on or about December 17, 2020 and in full on or about February 10, 2021.

44.    As explained in the financial analysis below, the PPP Loan Application Form and the PPP Loan Application Forgiveness Form submitted in relation to this loan contain materially false and fraudulent representations and pretenses.  Financial records associated with Corclyn Enterprises demonstrate that the business was not, in fact, unable to operate during at the same level as it had prior to the pandemic and, even setting aside this PPP loan, the business was more profitable in 2020 and 2021 than it had been in 2019.  Moreover, financial analysis conducted by the FBI demonstrates that portions of the PPP loan (which was received in April of 2020) were used for unauthorized purposes, including to fund transfers totaling $300,000.00 (beginning in May of 2020) from the business's bank account to a Robinhood investment account owned by Leonard Vandenberg, the contents of which subsequently went to fund various TD Ameritrade investment accounts associated with Leonard Vandenberg and owned by him and other members of his family.

45.    Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the scheme by which Leonard and/or Christy Vandenberg obtained PPP loan proceeds from this loan and used them to enrich themselves and members of their family violated 18 U.S.C. §§ 1343, 1344, 1349, 1956, and 1957.

*PPP Loan Number 346242 Funded on May 26, 2020 (Exhibit 1A Reference #2)*

46.    Records obtained from JP Stone show that Leonard Vandenberg and Christy

Vandenberg applied for a PPP loan on or about May 13, 2020, obtaining PPP loan proceeds for

SDGTEX Restaurants Inc. dba Something Different Grill in the amount of approximately

$50,000.00 from JP Stone.  The PPP Loan Application Form is attached as Exhibit 4.  In signing

the loan application, Leonard Vandenberg and Christy Vandenberg agreed the loan proceeds

would be used "only for the business related purposes as specified in the loan application."

Exhibit 4 at 2

47.    Other certifications that the applicant must initial include "The funds will be used

to retain workers and maintain payroll or make mortgage payments, lease payments, and utility

payments; I understand that if the funds are used for unauthorized purposes, the federal

government may pursue criminal fraud charges." *Id.*

48.    According to a PPP Loan Forgiveness Application Form 3508EZ, Leonard

Vandenberg applied for loan forgiveness on or about December 15, 2020. The PPP loan

forgiveness application is attached as Exhibit 5.

49.    The PPP Loan Forgiveness Application Form submitted in connection with this

loan contains substantially identical representations as the form discussed above in paragraph 42.

Exhibit 5 at 1-2.  The representations in this form also appear to have been individually certified

(by initials) by Leonard Vandenberg, and Leonard Vandenberg signed the form as an authorized

representative of the borrower.  *Id.*

50.    Records obtained from JP Stone indicate that the PPP loan was forgiven on or

about January 14, 2021.

51.     As explained in the financial analysis below, the PPP Loan Application Form and the PPP Loan Application Forgiveness Form submitted in relation to this loan contain materially false and fraudulent representations and pretenses.  Financial records associated with SDGTEX Restaurants Inc. demonstrate that the PPP loan proceeds were not used to cover payroll costs and other business expenses of SDGTEX Restaurants Inc., as represented, but instead were directed to (1) a bank account owned by Corclyn Enterprises, (2) another bank account owned by Leonard and Christy Vandenberg, and (3) an account-closing withdrawal of all remaining funds.

52.     Based on the facts set forth in this Affidavit, I submit that there is probable cause to believe that the scheme by which Leonard and/or Christy Vandenberg obtained PPP loan proceeds from this loan and used them to enrich themselves, other members of their family, and other businesses they owned violated 18 U.S.C. §§ 1343, 1344, 1349, 1956, and 1957.

***EIDL Loan Number 8227677400 Funded on May 18, 2020 (Exhibit 1A Reference #3)***

53.     Leonard Vandenberg and Christy Vandenberg submitted an intake loan application to the SBA on behalf of Corclyn Enterprises on or about March 30, 2020.  In the application, Leonard Vandenberg and Christy Vandenberg asserted that Corclyn Enterprises dba Something Different Grill is a restaurant business located at 405 West 4th in Portales, New Mexico.  Leonard Vandenberg and Christy Vandenberg each claimed 50% ownership of Corclyn Enterprises and claimed that Corclyn employed 112 individuals, earned $4,100,000.00 in gross revenues and had $1,234,354.00 in cost of goods sold for the 12 months prior to the disaster.

54.     The EIDL intake application form submitted in connection with this loan, attached as Exhibit 6, included the following text:

CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application, you certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future.

Exhibit 6 at 4.

The application also included the following text:

> WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b).  In addition, any false statement or misrepresentation to SBA may result in criminal, civil, or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement ad non-procurement transactions.  Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

*Id*.  The borrower on this loan also requested two modifications ("Mods"), each of which required an additional EIDL intake application form to be submitted to SBA, containing substantially identical representations to those set out above in this paragraph.  Each of the EIDL intake application forms had to be certified under penalty of perjury by a representative of the borrower (i.e., Leonard and/or Christy Vandenberg).

55.    The EIDL application materials associated with this loan also contained an LA&A submitted on behalf of Corclyn Enterprises and executed by Leonard Vandenberg, attached as Exhibit 7.  The LA&A contained a provision entitled "use of loan proceeds," which reads as follows:

> Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code lien filing fees and third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

Exhibit 7 at 3.  The LA&A also contained a provision titled "Limits on distribution of assets," which reads as follows:

Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

*Id.* at 5.  The LA&A also contains a provision titled "Borrower certifications," which includes

the following representation:

All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

*Id.* at 5.  The LA&A also contains a provision titled "Civil and criminal penalties," which reads

as follows:

Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

*Id.* at 6.  Finally, the LA&A contains a jurat preceding the signature of the representative of the

borrower, which reads as follows:

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA.  **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for an obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

*Id.* at 7.

21

56.     SBA records show that three modifications or "mods" were funded.  The LA&A for Mod 0 appears to have been executed by Leonard Vandenberg digitally via Docusign on May 18, 2020.  The LA&A for Mod 1 appears to have been executed by Leonard Vandenberg and on May 18, 2020.  The LA&A for Mod 2 appears to have been executed by Leonard Vandenberg and Christy Vandenberg on May 12, 2022.  Each of these LA&As contains representations that are substantially identical to the representations set out in paragraph 55.  The LA&A's identify both Leonard and Christy Vandenberg as "Owner/Officer."

57.     Mod 0 was funded in the amount of $150,000.00.  Mod 1 was funded in the amount of $1,200,000.  Mod 2 was funded in the amount of $2,000,000.00.

58.     On or about April 10, 2020, $10,000.00 was disbursed as an EIDL advance to JP Stone account ending in 7426 (JP 7426).  On or about May 18, 2020, $149,900.00 was disbursed to JP 7426.  On or about April 20, 2022, $1,050,000.00 was disbursed to JP 7426.  On or about May 15, 2022, $800,000.00 was disbursed to JP 7426.

59.     The total amount disbursed from this loan to JP 7426 was approximately $2,009,900.00.

60.     As explained in the financial analysis set out below, the EIDL intake applications and the LA&As submitted in relation to this loan and the related "Mods" contain materially false and fraudulent representations and pretenses.  Financial records associated with Corclyn Enterprises demonstrate that the EIDL proceeds were not used to cover operating expenses and other business expenses of Corclyn Enterprises, as represented, but instead were substantially used to fund investment accounts associated with Leonard Vandenberg and owned by Leonard Vandenberg and other members of his family.  Funds were also comingled in a JP Stone bank account ending in 7426, which belonged to Corclyn Enterprises, before funds from this account

were used to pay off a loan collateralized by a private aircraft owned by Leonard and Christy

Vandenberg and believed to be operated by Leonard Vandenberg, who is a licensed pilot.

61.     Based on the facts set out in this Affidavit, I submit that there is probable cause to

believe that the scheme by which Leonard and/or Christy Vandenberg obtained EIDL loan

proceeds from this loan and used those proceeds to enrich themselves and other members of their

family, including by funding investment accounts and paying off a loan collateralized by a

private aircraft, violated 18 U.S.C. §§ 1343, 1349, 1956, and 1957.

***EIDL Loan Number 8464537408 Funded on May 26, 2020 (Exhibit 1A Reference #4)***

62.     Leonard Vandenberg and Christy Vandenberg submitted an intake loan

application to the SBA on or about March 30, 2020.  In the application, Leonard Vandenberg and

Christy Vandenberg asserted LCV Real Estate is a real estate business located at 405 West 4th in

Portales, New Mexico.  Leonard Vandenberg and Christy Vandenberg each claimed 50%

ownership of LCV Real Estate and that LCV Real Estate employed 2 individuals, earned

$122,800.00 in gross revenues, had $97,000.00 in cost of goods sold for the 12 months prior to

the disaster, and lost $13,000.00 in rents due to the disaster.

63.     An EIDL intake application was submitted to SBA on behalf of LCV Real Estate

on March 30, 2020.  This EIDL intake application included representations substantially

identical to the representations set out in paragraph 54.  Additional EIDL intake Applications

containing substantially identical representations were submitted to SBA on behalf of LCV Real

Estate in connection with the "Mods" identified below.

64.     An LA&A was submitted to SBA on behalf of LCV Real Estate as part of the

loan application materials for this EIDL loan on May 18, 2020.  The LA&A contained

representations substantially identical to those set out in paragraph 55.  The LA&A appears to

have been executed electronically by Leonard Vandenberg.

65.     SBA records show that three "mods" were funded.  The LA&A for Mod 0

appears to have been executed by Leonard Vandenberg digitally via Docusign on May 18, 2020.

The LA&A for Mod 1 appears to have been executed by Leonard Vandenberg and Christy

Vandenberg on April 7, 2022.  The LA&A for Mod 2 appears to have been executed by Leonard

Vandenberg and Christy Vandenberg on May 4, 2022.  The LA&A's identify both Leonard and

Christy Vandenberg as "Owner/Officer."

66.     Mod 0 was funded in the amount of $11,000.00.  Mod 1 was funded in the

amount of $24,000.00.  Mod 2 was funded in the amount of $275,000.00.

67.     On or about April 15, 2020, $2,000.00 was disbursed as an EIDL advance to JP

Stone account ending in 7412 (JP 7412).  On or about May 26,2020, $11,000.00 was disbursed

to #JP 7412.  On or about April 10, 2022, $13,000.00 was disbursed to JP 7412.  On or about

May 7, 2022, $250,900.00 was disbursed to JP 7412.

68.     The total amount disbursed from this loan to JP 7412 was approximately

$276,900.00.

69.     As explained in the financial analysis set out below, the EIDL intake applications

and the LA&As submitted in relation to this loan and the associated "Mods" contain materially

false and fraudulent representations and pretenses.  Financial records associated with LCV Real

Estate demonstrate that the EIDL proceeds were not used to cover operating expenses and other

business expenses of LCV Real Estate, as represented, but instead were substantially used to

fund investment accounts associated with Leonard Vandenberg and owned by Leonard

Vandenberg and other members of his family.  EIDL proceeds may also have been used to fund the purchase of real property, including a new "Something Different Grill" location.

70.     Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the scheme by which Leonard and/or Christy Vandenberg obtained EIDL loan proceeds from this loan and used those proceeds to (1) enrich themselves and other members of their family, and (2) purchase real property on behalf of themselves and/or one or more businesses they owned violated 18 U.S.C. §§ 1343, 1349, 1956, and 1957.

***EIDL Loan Number 7701747401 Funded on May 17, 2020 (Exhibit 1A Reference #5)***

71.     Leonard Vandenberg and Christy Vandenberg submitted an intake loan application to the SBA on or about March 30, 2020.  In the application, Leonard Vandenberg and Christy Vandenberg asserted SDGTEX Restaurants Inc., trade name Something Different Grill, is a restaurant business located at 405 West 4th in Portales, New Mexico.  Leonard Vandenberg and Christy Vandenberg both claimed 50% ownership of SDGTEX Restaurants and that SDGTEX Restaurants employed 47 individuals, earned $1,622,459.00 in gross revenues and had $539,306.00 in cost of goods sold for the 12 months prior to the disaster.

72.     An EIDL intake application was submitted to SBA on behalf of SDGTEX Restaurants Inc. on March 30, 2020.  This EIDL intake application included representations substantially identical to the representations set out in paragraph 54.  Additional EIDL intake Applications containing substantially identical representations were submitted to SBA on behalf of SDGTEX in connection with the "Mods" identified below.

73.     An LA&A was submitted to SBA on behalf of LCV Real Estate as part of the loan application materials for this EIDL loan on May 17, 2020.  The LA&A contained

representations substantially identical to those set out in paragraph 55.  The LA&A appears to have been executed electronically by Leonard Vandenberg.

74.      SBA records show that two modifications or "mods" were funded.  The LA&A for Mod 0 appears to have been signed by Leonard Vandenberg digitally via Docusign on May 17, 2020.  The LA&A for Mod 1 appears to have been signed by Leonard Vandenberg and Christy Vandenberg on April 12, 2022.[8]

75.      The LA&A's identify both Leonard and Christy Vandenberg as "Owner/Officer."

76.      Mod 0 was funded in the amount of $150,000.00.  Mod 1 was funded in the amount of $499,000.00.  Mod 2 was declined.

77.      On or about April 15, 2020, $10,000.00 was disbursed as an EIDL advance to City Bank account #ending in 0686 (CB 0686).  On or about May 17, 2020, $149,900.00 was disbursed to City Bank account ending in 0472 (CB 0472) .  On or about April 15, 2022, $349,000.00 was disbursed to CB 0472.

78.      The total amount disbursed from this loan was approximately $508,900.00.

79.      As explained in the financial analysis set out below, the EIDL intake applications and the LA&As submitted in relation to this loan and the associated "Mods" contain materially false and fraudulent representations and pretenses.  Financial records associated with SDGTEX Inc. dba Something Different Grill demonstrate that the EIDL proceeds were not used entirely to cover operating expenses and other business expenses of the business, as represented, but instead

---

[8] The documentation provided to the United States by SBA did not include an executed LA&A in relation to Mod 2 of this loan, which was declined.  It is possible that Mod 2 was declined *because* no executed LA&A was submitted; it is also possible that the executed LA&A was omitted from the information provided to the United States and that Mod 2 was declined for some other reason.

were substantially used to fund investment accounts associated with Leonard Vandenberg and owned by Leonard Vandenberg and other members of his family.

80.     Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the scheme by which Leonard and/or Christy Vandenberg obtained EIDL loan proceeds from this loan and used those proceeds to enrich themselves and other members of their family violated 18 U.S.C. §§ 1343, 1349, 1956, and 1957.

### JP Stone Accounts for Corclyn Enterprises, LCV Real Estate, SDGTEX Restaurants, and Leonard and Christy Vandenberg

*JP Stone Account in the name of Corclyn Enterprises ending in 7426*:

81.     During the investigation, agents obtained bank account information for a JP Stone Bank account in the name of Corclyn Enterprises Inc. ending in 7426 (JP 7426).  JP 7426 is a business account whose signers are listed as Leonard Vandenberg, Christy Vandenberg, J.P., and C.P.[9]  The account was opened on or about September 18, 2008.  An analysis of this account shows deposits of approximately $2,309,900.00 in PPP and EIDL loan proceeds as reflected in Exhibit 1A.

82.     The following chart summarizes the COVID relief loan proceeds deposited into JP 7426:

| Business Entity | Date | Amount | Loan Type | Loan Number |
|---|---|---|---|---|
| Corclyn Enterprises DBA Something Different Grill | 4/17/2020 | $300,000.00 | PPP | 346009 |
| Corclyn Enterprises DBA Something Different Grill | 4/13/2020 | $10,000.00 | EIDL | 8227677400 |

---

[9] A review of the relevant records indicates that J.P. and C.P. are family members of Christy Vandenberg.

| | | | | |
|---|---|---|---|---|
| Corclyn Enterprises DBA Something Different Grill | 5/19/2020 | $149,900.00 | EIDL | 8227677400 |
| Corclyn Enterprises DBA Something Different Grill | 4/22/2022 | $1,050,000.00 | EIDL | 8227677400 |
| Corclyn Enterprises DBA Something Different Grill | 5/17/2022 | $800,000.00 | EIDL | 8227677400 |
| | **TOTAL** | **$2,309,900.00** | | |

83.     FBI personnel conducted a financial analysis for JP 7426 covering the time period between January 2019 and December 2022.  FBI personnel identified account credits and grouped what appeared to be legitimate business deposits (CR).  FBI personnel identified account debits including vendor payments, payroll, and taxes and grouped them as expenses (DR).  The figures below do not include the above-mentioned PPP/EIDL loan proceed or transfers to brokerage services such as TD Ameritrade and Robinhood (that is to say, it summarizes what the account activity would have been absent the COVID relief loans and subsequent transfers to brokerage accounts) .

JP 7426- Corclyn Enterprises dba Something Different Grill

| Years | Amount (CR) | Amount (DR) | Sum of Net Activity |
|---|---|---|---|
| 2019 Total | $  4,822,809.41 | $  (4,770,127.32) | $  52,682.09 |
| 2020 Total | $  5,516,736.60 | $  (5,378,603.52) | $  138,133.08 |
| 2021 Total | $  6,321,277.35 | $  (6,019,116.48) | $  302,160.87 |
| 2022 Total | $  6,398,992.28 | $  (6,312,501.53) | $  86,490.75 |
| Grand Total | $  23,059,815.64 | $ (22,480,348.85) | $  579,466.79 |

84.     As indicated above, even without the COVID relief loans, the business was more profitable in 2020 and 2021 than it had been in 2019.[10] This contradicts the representations made in the PPP Loan Forgiveness Application associated with this loan, including representations that the business was unable to operate after February 2020 at the same level it had operated prior to the pandemic. *See* ¶ 42; Exhibit 3 at 2.

85.     In 2019, monthly revenue averaged approximately $401,900.78.  Monthly expenses averaged approximately $397,510.61.  Monthly net balances, or "profits," averaged approximately $4,390.17.  Total profits for the year were approximately $52,682.09.

86.     In 2020, monthly revenue averaged approximately $459,728.05.  Monthly expenses averaged approximately $448,216.96.  Monthly profits averaged approximately $11,551.09. Total profits for the year were approximately $138,133.08.

87.     In 2021, monthly revenue averaged approximately $526,773.11. Monthly expenses averaged approximately $501,593.04. Monthly profits averaged approximately $25,180.07.  Total profits for the year were approximately $302,160.87.

---

[10] This increase in profitability would make sense if, as indicated by the activity observed in the operating account, the business remained open when other restaurant businesses, including competitors, suspended or narrowed business operations due to the pandemic.

88.     In 2022, monthly revenue averaged approximately $533,249.36.  Monthly expenses averaged approximately $526,041.79.  Monthly profits averaged approximately $7,207.56.  Total profits for the year were approximately $86,490.75.  According to bank records, JP 7426 (owned by Corclyn Enterprises) received a deposit of approximately $569,922.27 on September 6, 2022.  The corresponding deposit slip includes a handwritten note that appears to read "IRS ERC."  This may relate to an "IRS Employee Retention Credit," which is a program providing a refundable tax credit to eligible employers for keeping employees on their payroll despite the economic hardship occasioned by the COVID 19 pandemic.  The "IRS ERC" deposit is included in the 2022 net operating profit of $86,490.75.

89.     Table 1 details the debit and credit activity and daily balance calculated for JP 7426, *including* the receipt of PPP/EIDL funds in April-May 2020 and April-May 2022, the periods during which the proceeds of all 5 of the PPP and EIDL loans discussed in this Affidavit were disbursed.  The daily balances below *also include* transfers made to brokerage accounts in the name of Leonard and Christy Vandenberg.

Table 1

| Years | Day | Amount (CR) | Amount (DR) | Net Balance | Daily Balance (Calculated) |
|-------|-----|-------------|-------------|-------------|----------------------------|
| 2020 | 13-Apr | $49,416.26 | ($17,407.28) | $32,008.98 | $215,452.29 |
| 2020 | 14-Apr | $50.00 | ($31,519.06) | ($31,469.06) | $183,983.23 |
| 2020 | 15-Apr | $17,350.84 | ($6,374.37) | $10,976.47 | $194,959.70 |
| 2020 | 16-Apr | $14,675.76 | ($58,337.58) | ($43,661.82) | $151,297.88 |
| 2020 | 17-Apr | $317,177.69 | ($576.45) | $316,601.24 | $467,899.12 |
| 2020 | 20-Apr | $55,100.76 | ($5,466.86) | $49,633.90 | $517,533.02 |
| 2020 | 21-Apr | $14,096.28 | ($82.64) | $14,013.64 | $531,546.66 |
| 2020 | 22-Apr | $12,037.71 | ($33,696.69) | ($21,658.98) | $509,887.68 |
| 2020 | 19-May | $168,417.13 | ($46,818.88) | $121,598.25 | $686,599.30 |
| 2020 | 20-May | $17,255.00 | $0.00 | $17,255.00 | $703,854.30 |
| 2020 | 21-May | $15,529.71 | ($5,333.37) | $10,196.34 | $714,050.64 |
| 2020 | 22-May | $18,902.76 | ($27,108.19) | ($8,205.43) | $705,845.21 |

| 2020 | 26-May | $69,996.11 | ($41,070.60) | $28,925.51 | $734,770.72 |
| 2020 | 27-May | $13,704.53 | ($75,365.22) | ($61,660.69) | $673,110.03 |
| 2020 | 28-May | $14,852.27 | ($145,753.04) | ($130,900.77) | $542,209.26 |
| 2020 | 29-May | $17,313.05 | ($28,195.26) | ($10,882.21) | $531,327.05 |
| 2022 | 22-Apr | $1,066,139.75 | ($8,100.00) | $1,058,039.75 | $1,313,955.39 |
| 2022 | 25-Apr | $48,637.21 | ($250,865.51) | ($202,228.30) | $1,111,727.09 |
| 2022 | 26-Apr | $14,689.01 | ($252,240.63) | ($237,551.62) | $874,175.47 |
| 2022 | 27-Apr | $16,984.81 | ($351,321.41) | ($334,336.60) | $539,838.87 |
| 2022 | 17-May | $817,120.91 | ($135,381.68) | $681,739.23 | $945,762.01 |
| 2022 | 18-May | $15,221.99 | ($5,536.64) | $9,685.35 | $955,447.36 |
| 2022 | 19-May | $17,686.75 | ($40,550.08) | ($22,863.33) | $932,584.03 |
| 2022 | 20-May | $14,818.24 | ($8,091.06) | $6,727.18 | $939,311.21 |

90.     The following chart depicts outflows over time from JP 7426 into the named brokerage accounts. *See* Exhibit 1B (reference chart for relevant accounts). Outflows also include a single transfer to USAlliance. As further explained below, this transfer constitutes a loan payoff associated with a private plane belonging to Leonard and Christy Vandenberg and believed to be operated by Leonard Vandenberg, who is a licensed pilot.

| TRANSACTION DESCRIPTION | PAYEE | DATE(s) | AMOUNT |
|---|---|---|---|
| ACH Transfers | Vandenberg Robinhood 3505 | 5/2020 – 1/2021 | $330,000.00 |
| ACH Transfers | Vandenberg TD Ameritrade 5235 | 2/2/2021-6/10/2022 | $970,000.00 |
| ACH Transfers | Vandenberg TD Ameritrade 3730 | 4/25/2022-9/15/2022 | $1,950,000.00 |
| ACH Transfer | USAlliance | 5/17/2022 | $63,980.33 |

91.     Table 2 details the debit and credit activity with the daily balance calculated for JP 7426, *excluding* the receipt of the PPP and EIDL loan proceeds in April-May 2020 and April-May 2022. The daily balances below *include* transfers made to brokerage accounts in the name of Leonard and/or Christy Vandenberg. The table demonstrates that, without the PPP and EIDL loan proceeds that were deposited into the business account, the transfers to brokerage accounts

would have resulted in JP 7426 attaining a negative balance, reaching approximately negative $1.75 million in May of 2022.

Table 2

| Years | Day | Amount (CR) | Amount (DR) | Net Balance | Daily Balance (Calculated) |
|---|---|---|---|---|---|
| 2020 | 13-Apr | $39,416.26 | ($17,407.28) | $22,008.98 | $104,950.59 |
| 2020 | 14-Apr | $50.00 | ($31,519.06) | ($31,469.06) | $73,481.53 |
| 2020 | 15-Apr | $17,350.84 | ($6,374.37) | $10,976.47 | $84,458.00 |
| 2020 | 16-Apr | $14,675.76 | ($58,337.58) | ($43,661.82) | $40,796.18 |
| 2020 | 17-Apr | $17,177.69 | ($576.45) | $16,601.24 | $57,397.42 |
| 2020 | 20-Apr | $55,100.76 | ($5,466.86) | $49,633.90 | $107,031.32 |
| 2020 | 21-Apr | $14,096.28 | ($82.64) | $14,013.64 | $121,044.96 |
| 2020 | 22-Apr | $12,037.71 | ($33,696.69) | ($21,658.98) | $99,385.98 |
| 2020 | 19-May | $18,517.13 | ($46,818.88) | ($28,301.75) | $126,197.60 |
| 2020 | 20-May | $17,255.00 | $0.00 | $17,255.00 | $143,452.60 |
| 2020 | 21-May | $15,529.71 | ($5,333.37) | $10,196.34 | $153,648.94 |
| 2020 | 22-May | $18,902.76 | ($27,108.19) | ($8,205.43) | $145,443.51 |
| 2020 | 26-May | $69,996.11 | ($41,070.60) | $28,925.51 | $174,369.02 |
| 2020 | 27-May | $13,704.53 | ($75,365.22) | ($61,660.69) | $112,708.33 |
| 2020 | 28-May | $14,852.27 | ($145,753.04) | ($130,900.77) | ($18,192.44) |
| 2020 | 29-May | $17,313.05 | ($28,195.26) | ($10,882.21) | ($29,074.65) |
| 2022 | 22-Apr | $16,139.75 | ($8,100.00) | $8,039.75 | ($563,709.00) |
| 2022 | 25-Apr | $48,637.21 | ($250,865.51) | ($202,228.30) | ($765,937.30) |
| 2022 | 26-Apr | $14,689.01 | ($252,240.63) | ($237,551.62) | ($1,003,488.92) |
| 2022 | 27-Apr | $16,984.81 | ($351,321.41) | ($334,336.60) | ($1,337,825.52) |
| 2022 | 17-May | $17,120.91 | ($135,381.68) | ($118,260.77) | ($1,731,902.38) |
| 2022 | 18-May | $15,221.99 | ($5,536.64) | $9,685.35 | ($1,722,217.03) |
| 2022 | 19-May | $17,686.75 | ($40,550.08) | ($22,863.33) | ($1,745,080.36) |
| 2022 | 20-May | $14,818.24 | ($8,091.06) | $6,727.18 | ($1,738,353.18) |

92.     As shown by the tables above, transfers from the Corclyn Enterprises account to brokerage accounts owned by Leonard and/or Christy Vandenberg would not have been financially feasible absent the receipt of PPP/EIDL loans.  This demonstrates that the PPP and EIDL loan proceeds were substantially used to fund the brokerage accounts.  Furthermore, the proximity of these transfers to the submission of loan application and loan modification

documents and the receipt of loan proceeds in April/May of 2020 and April/May of 2022

supports probable cause that Leonard and Christy Vandenberg did not intend to use the proceeds

of the loans for authorized business purposes at the time of the applications, but rather intended

to use the loan proceeds to personally enrich themselves, in violation of the terms of the loans

agreements.

***JP Stone Account in the name of SDGTEX Restaurants Inc. ending in 0939:***

93.     During the investigation, agents obtained bank account information for a JP Stone

bank account in the name of SDGTEX Restaurants Inc. ending in 0939 (JP 0939).  JP 0939 is a

business account whose signers are Leonard Vandenberg and Christy Vandenberg.  Bank records

list Leonard Vandenberg as "President" and Christy Vandenberg as "Secretary to President."

The account was opened on or about May 20, 2020.

94.     The following chart summarizes COVID relief loan proceeds deposited into JP

0939:

| Business Entity | Date | Amount | Loan Type | SBA Loan Number | Loan Guarantor(s) |
|---|---|---|---|---|---|
| SDGTEX Restaurants Inc. | 5/26/2020 | $50,000.00 | PPP | 346242 | Leonard Vandenberg and Christy Vandenberg |
| | **TOTAL** | **$50,000.00** | | | |

95.     The records show the account received $50,000.00 in PPP loan proceeds for the

above referenced loan, for which Leonard Vandenberg and Christy Vandenberg were guarantors.

96.     FBI personnel conducted a financial analysis for JP 0939 covering the time period

between May 2020 and May 2021.  FBI personnel identified account credits and debits.  The

figures below do not include the above-mentioned PPP/EIDL loan proceed or transfers to

brokerage services.

JP Stone 0939 SDGTEX Restaurants Inc.

| Years | Amount (CR) | Amount (DR) | Sum of Net Activity |
|---|---|---|---|
| 2020 Total | $  75,000.00 | $  (80,750.80) | $  (5,750.80) |
| 2021 Total | | $  (44,265.32) | $  (44,265.32) |
| Grand Total | $  75,000.00 | $  (125,016.12) | $  (50,016.12) |

97.     Outflows from JP 0939 include the following:

| TRANSACTION DESCRIPTION | PAYEE | DATE | AMOUNT |
|---|---|---|---|
| Transfers | Corclyn Enterprises JP 7426 | June 5, 2020 – July 30, 2020 | $80,694.24 |
| Transfers | Leonard and Christy Vandenberg JP 3360 | April 7, 2021 | $5,000.00 |
| Checking Withdrawal Closure | Account holder | May 11, 2021 | $39,237.10 |

98.     As indicated in these charts, this operating account would have operated at a significant loss absent the $50,000.00 PPP loan received in May 2020.  With the $50,000.00 loan, the account essentially broke even as of the end of the period analyzed by the FBI (i.e., the -$50.016.12 would essentially be cancelled out if the $50,000.00 in loan proceeds had been included in the analysis).  It appears that the $50,000.00 in loan proceeds, as well as a $75,000.00 currency deposit comprising the majority of the other contents of the account, were effectively distributed to (1) JP 7426, (2) a personal bank account belonging to Leonard and Christy Vandenberg ending in 3360, and (3) an account-closing withdrawal of all remaining funds.

**JP Stone Account in the name of LCV Real Estate ending in 7412**

99.     During the investigation, agents obtained bank account information for a JP Stone bank account in the name of LCV Real Estate ending in 7412 (JP 7412).  JP 7412 is a business

account which was opened on or about May 23, 2018 and lists Leonard Vandenberg and Christy Vandenberg as "managing members" and J.P. as a "convenience signer."

100.   The following chart summarizes COVID relief loan proceeds deposited into JP 7412:

| Business Entity | Date | Amount | Loan Type | SBA Loan Number |
|---|---|---|---|---|
| LCV Real Estate | 4/16/2020 | $2,000.00 | EIDL | 8464537408 |
| LCV Real Estate | 5/29/2020 | $11,000.00 | EIDL | 8464537408 |
| LCV Real Estate | 4/12/2022 | $13,000.00 | EIDL | 8464537408 |
| LCV Real Estate | 5/10/2022 | $250,900.00 | EIDL | 8464537408 |
| | TOTAL | $276,900.00 | | |

101.   FBI personnel conducted a financial analysis for JP 7412 covering the time period between January 2019 and December 2022.  FBI personnel identified account credits and grouped what appeared to be legitimate business deposits.  FBI personnel identified account debits including vendor payments, payroll, and taxes and grouped them as expenses.  The figures below do not include the above-mentioned PPP/EIDL loan proceed or transfers to brokerage services.

JP 7412 LCV Real Estate

| Years | Amount (CR) | Amount (DR) | Sum of Net Activity |
|---|---|---|---|
| 2019 Total | $ 180,630.37 | $ (183,403.66) | $ (2,773.29) |
| 2020 Total | $ 192,783.25 | $ (196,833.99) | $ (4,050.74) |
| 2021 Total | $ 568,081.89 | $ (230,885.13) | $ 337,196.76 |
| 2022 Total | $ 604,108.79 | $ (561,356.31) | $ 42,752.48 |
| Grand Total | $ 1,545,604.30 | $ (1,172,476.09) | $ 373,125.21 |

102.   In 2019, monthly revenue averaged approximately $15,052.53.  Monthly expenses averaged approximately $15,283.64.  Monthly net balances, or "profits," averaged approximately -$231.11.  Total profits for the year were approximately -$2,773.29.

103.    In 2020, monthly revenue averaged approximately $16,065.27.  Monthly expenses averaged approximately $16,402.83.  Monthly profits averaged approximately -$337.56.  Total profits for the year were approximately -$4,050.74.

104.    In 2021, monthly revenue averaged approximately $47,340.16.  Monthly expenses averaged approximately $19,240.43.  Monthly profits averaged approximately $28,099.73.  Total profits for the year were approximately $337,196.76.  These figures reflect the fact that (1) approximately $302,800.00 was transferred from JP 7426 to JP 7412 in October 2021 and (2) approximately $35,000.00 was transferred from JP 3360 to JP 7412 in October 2021.  *See* Exhibit 1B (reference chart for relevant accounts).

105.    In 2022, monthly revenue averaged approximately $50,342.40.  Monthly expenses averaged approximately $46,799.69.  Monthly profits averaged approximately $3,562.71.  Total profits for the year were approximately $42,752.48.  The most significant source of revenue was $400,000.00 that JP Stone records indicate was derived from what appeared to be a home equity loan taken out by Leonard Vandenberg and Christy Vandenberg in March 2022 against a residential property located in Lubbock, TX.

106.    Specific outflows include the following:

| TRANSACTION DESCRIPTION | PAYEE | DATE | AMOUNT |
|---|---|---|---|
| Transfers | TD Ameritrade | 4/21/2022 | $206,543.00 |
| Transfers | TD Ameritrade | 6/17/2022 | $125,000.00 |
| Wire Transfer | Lubbock Abstract Title and Loan Escrow | 10/26/2021 | $297,686.08 |

107.    Records received showed that, prior to the separate $400,000.00 loan described above, Leonard Vandenberg and Christy Vandenberg took out a loan for approximately $488,620.10 on or about December 15, 2021 from JP Stone.  This loan appeared to finance the purchase of the property of ███████████████████.  As of December 2022, open-

source research indicates this address is now a Something Different Grill location. The proceeds of the $400,000.00 home equity loan, the $489,620.10 commercial real estate loan, and the $276,900.00 in EIDL loans were all comingled in this account.

***City Bank Account in the name of Something Different Grill ending in 0472***

108.     During the investigation, agents obtained bank account information from City Bank (CB 0472) for an account associated with SDGTEX Inc. dba Something Different Grill. The account was opened on or about April 13, 2020. Leonard Vandenberg and Christy Vandenberg are listed as authorized signers.

109.     The following chart summarized COVID relief loan proceeds deposited into CB 0472:

| Business Entity | Date | Amount | Loan Type | SBA Loan Number | Loan Guarantor(s) |
|---|---|---|---|---|---|
| SDGTEX Restaurants Inc. | 5/19/2020 | $149,900.00 | EIDL | 7701747401 | Leonard Vandenberg and Christy Vandenberg |
| SDGTEX Restaurants Inc. | 4/18/2022 | $349,000.00 | EIDL | 7701747401 | Leonard Vandenberg and Christy Vandenberg |
| | **TOTAL** | **$498,900.00** | | | |

110.     FBI personnel conducted a financial analysis for CB 0472 covering the time period between April 2020 and October 2022. FBI personnel identified account credits and grouped what appeared to be legitimate business deposits. FBI personnel identified account debits including vendor payments, payroll, and taxes and grouped them as expenses. The figures below do not include the above-mentioned PPP/EIDL loan proceed or transfers to brokerage services.

| Years | Amount (CR) | Amount (DR) | Sum of Net Monthly Activity |
|---|---|---|---|
| 2020 Total | $ 1,449,656.87 | $ (1,425,582.14) | $ 24,074.73 |
| 2021 Total | $ 2,702,304.76 | $ (2,714,868.35) | $ (12,563.59) |
| 2022 Total | $ 3,314,100.36 | $ (3,642,950.24) | $ (328,849.88) |
| Grand Total | $ 7,466,061.99 | $ (7,783,400.73) | $ (317,338.74) |

This data indicates that, absent the COVID relief loans, the account would have operated at a significant loss during the relevant period.

111.     The following chart summarizes transfers between CB 0472 and the named brokerage accounts (with red text indicating transfers out of CB0472):

| PAYER | PAYEE | DATE(s) | AMOUNT |
|---|---|---|---|
| CB 0472 | TD 5235 | 2/3/2021 | $ (50,000.00) |
| CB 0472 | TD 5235 | 2/11/2021 | $ (50,000.00) |
| CB 0472 | TD 5235 | 8/20/2021 | $ (10,000.00) |
| TD 5235 | CB 0472 | 12/28/2021 | $ 50,000.00 |
| CB 0472 | TD 5235 | 1/25/2022 | $ (50,000.00) |
| TD 5235 | CB 0472 | 1/31/2022 | $ 50,000.00 |
| CB 0472 | TD 3730 | 4/19/2022 | $ (100,000.00) |
| CB 0472 | TD 3730 | 4/20/2022 | $ (120,000.00) |
| TD 5235 | CB 0472 | 6/16/2022 | $ 100,000.00 |
| TD 5235 | CB 0472 | 7/1/2022 | $ 50,000.00 |
| TD 3730 | CB 0472 | 7/21/2022 | $ 150,000.00 |
| TD 3730 | CB 0472 | 8/18/2022 | $ 75,000.00 |
| TD 3730 | CB 0472 | 8/23/2022 | $ 100,000.00 |
| TD 3730 | CB 0472 | 9/7/2022 | $ 60,000.00 |
| CB 0472 | TD 3730 | 9/16/2022 | $ (200,000.00) |
| CB 0472 | TD 3730 | 9/19/2022 | $ (200,000.00) |
| TD 3730 | CB 0472 | 10/20/2022 | $ 104,500.00 |
| | | Gross Deposits | $ 739,500.00 |
| | | Net Deposits | $ (40,500.00) |

112.     Based on analysis performed by FBI personnel, the transfers between CB 0472 (one of the operating accounts of SDGTEX) and both TD 5235 (a brokerage account at TD Ameritrade) and TD 3730 (another brokerage account at TD Ameritrade) demonstrate that, although much of the EIDL loan proceeds that went into CB 0472 were ultimately used to cover operating expenses of SDGTEX, on a net basis approximately $40,500.00 in value was extracted from the CB 0472 operating account into TD 5235 and TD 3730, which would not have been possible absent the COVID relief loans. [11]  The transfers between the operating account and the brokerage accounts appear to comingle the COVID relief loan proceeds with the profits of the businesses while extracting some of the value of the proceeds into TD 5235 and TD 3730 for the personal benefit of Leonard and/or Christy Vandenberg.  I submit that, based on this information and the other facts contained in this Affidavit, there is probable cause to believe that these transactions violated 18 U.S.C. § 1956(a)(1)(B)(i), that is, that they "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  I further submit that there is probable cause to believe that each of these transactions over $10,000 violated 18 U.S.C. § 1957 in that each such transaction constituted an instance of Leonard and/or Christy Vandenberg "knowingly

---

[11] This would be contrary to the representation in the LA&A form stating the following:

> Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

*See* Exhibit 7 at 5.  SBA records indicate that neither Leonard nor Christy Vandenberg, nor anyone else representing any of the borrowers, requested prior written consent from the SBA to authorize distributions of the borrowers' assets to the brokerage accounts.

engag[ing] in or attempt[ing] to engage in a transaction in criminally derived property of a value greater than $10,000" of property that was "derived from specified unlawful activity."

***City Bank Account in the name of Something Different Grill ending in 0686***

113.    During the investigation, agents obtained bank account information from City Bank for Something Different Grill (CB 0686).

114.    The following chart summarized COVID relief loan proceeds deposited into CB 0686:

| Business Entity | Date | Amount | Loan Type | SBA Loan Number | Loan Guarantor(s) |
|---|---|---|---|---|---|
| SDGTEX Restaurants Inc. | 4/15/2020 | $10,000.00 | EIDL | 7701747401 | Leonard Vandenberg and Christy Vandenberg |
| | **TOTAL** | **$10,000.00** | | | |

115.    FBI personnel conducted a financial analysis for CB 0686 covering the time period between December 2017 and May 2020.  FBI personnel identified account credits and grouped what appeared to be legitimate business deposits.  FBI personnel identified account debits including vendor payments, payroll, and taxes and grouped them as expenses.  The figures below do not include the above-mentioned PPP/EIDL loan proceeds or transfers to brokerage services.

| Years | Amount (CR) | Amount (DR) | Sum of Monthly Activity |
|---|---|---|---|
| **2017 Total** | $    174,900.43 | $   (200,498.79) | $    (25,598.36) |
| **2018 Total** | $  2,015,776.08 | $ (2,045,949.57) | $    (30,173.49) |
| **2019 Total** | $  1,734,460.67 | $ (1,733,202.30) | $      1,258.37 |
| **2020 Total** | $    467,148.46 | $   (492,111.24) | $    (24,962.78) |
| **Grand Total** | **$  4,392,285.64** | **$ (4,471,761.90)** | **$    (79,476.26)** |

116.    FBI analysis did not identify any significant misapplication of the $10,000.00 in EIDL proceeds deposited into this account.  No funds directly identified with this account are included in the proposed property to be seized.  *See* Exhibit 1C (flow of funds).

**JP Stone Account in the name of Leonard Vandenberg and Christy Vandenberg ending in 3360**

117.    A JP Stone personal checking account in the name of Leonard Vandenberg and Christy Vandenberg ending in 3360 (JP 3360) was discovered and analyzed during the investigation.  JP 3360 was opened on or about June 6, 2018.

118.    From April 1, 2020 to October 4, 2022, JP 3360 received approximately $330,978.08 in transfers from JP 7412 and JP 7426.

119.    From April 30, 2020 to October 14, 2022, JP 3360 received approximately $137,561.90 in payroll deposits from Something Different, including from CB 0472 and CB 0686.

120.    This account appears to have been used by Leonard and/or Christy Vandenberg to receive payroll from their own employment with businesses they owned.  Funds directly identified with this account are not included in the proposed property for seizure.  *See* Exhibit 1C (flow of funds).

**Wells Fargo Account in the name of Leonard Vandenberg and Christy Vandenberg ending in 4606**

121.    A Wells Fargo personal checking account in the name of Leonard Vandenberg and Christy Vandenberg ending in 4606 (WF 4606) was discovered and analyzed during the investigation.  WF 4606 was opened on or about April 11, 2007.

122.    No PPP or EIDL loan proceeds appear to have been deposited directly into WF 4606.

123.    From March 3, 2020 to November 10, 2022, payroll deposits were made to Leonard Vandenberg into WF 4606 from "Something Differ Payroll…" totaling approximately $368,969.36.

124.    From March 30, 2020 to February 1, 2021, five transfers between WF 4606 and a Robinhood trading account ending in 3505 were made, resulting in a net transfer of approximately $30,000.00 from WF 4606 to the Robinhood trading account ending in 3505.[12]

***Robinhood Account in the name of Leonard Vandenberg ending in 3505***

125.    Robinhood is an American financial services company that facilitates trades of stocks, exchange-traded funds, and cryptocurrencies.  Over the course of the investigation, a Robinhood account in the name of Leonard Vandenberg ending in 3505 (RH 3505) was discovered and analyzed by FBI personnel.

    a.    The account application was created on or about December 13, 2018 and approved on or about December 14, 2018.

    b.    According to records obtained from Robinhood, RH 3505 had two accounts listed in ACH Relationship details: JP 7426 and WF 4606.

---

[12] This $30,000.00 in net transfers appears to comprise legitimate salary income paid into WF 4606.  The United States is nevertheless requesting that the $30,000.00 be included in the property to be seized because there is probable cause to believe that it is property involved in money laundering.  The $30,000.00 ultimately ended up going into the TD Ameritrade Account ending in 5235 (into which the Robin Hood account ending in 3505 was eventually transferred, as indicated below).  As explained in this Affidavit, there is probable cause to believe that the purpose of TD 5235 was to conceal the proceeds of specified unlawful activity, namely wire fraud, bank fraud, and conspiracy.  The entire contents of the account may therefore be seized as property "involved in" money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

c. The account statement from June 2019 shows a portfolio value of approximately $6,120.36.

d. Account statements from July 2019 to February 2020 show a portfolio value of $0.00.

e. From May 2020 to January 2021, approximately 9 ACH deposits were made into RH 3505 from JP 7426, totaling approximately $330,000.00. The transactions are summarized below:

| Payer | Payee | Date | Amount |
|-------|-------|------|--------|
| JP 7426 | RH 3505 | 5/26/2020 | $10,000.00 |
| JP 7426 | RH 3505 | 6/3/2020 | $20,000.00 |
| JP 7426 | RH 3505 | 6/8/2020 | $20,000.00 |
| JP 7426 | RH 3505 | 6/12/2020 | $30,000.00 |
| JP 7426 | RH 3505 | 6/19/2020 | $50,000.00 |
| JP 7426 | RH 3505 | 6/24/2020 | $50,000.00 |
| JP 7426 | RH 3505 | 8/31/2020 | $50,000.00 |
| JP 7426 | RH 3505 | 12/10/2020 | $50,000.00 |
| JP 7426 | RH 3505 | 1/28/2021 | $50,000.00 |
| | | **Total:** | **$330,000.00** |

f. Account statements from WF 4606 and RH 3505 were analyzed to determine what transactions occurred between the accounts. Between July 2019 and February 2021 six transactions occurred, totaling net deposits into RH 3505 of approximately $23,879.64. The transactions are summarized below (with red text indicating transfers out of RH 3505):

| Payer | Payee | Date | Amount |
|-------|-------|------|--------|
| RH 3505 | WF 4606 | 7/8/2019 | ($6,120.36) |
| WF 4606 | RH 3505 | 3/31/2020 | $5,000.00 |
| WF 4606 | RH 3505 | 4/10/2020 | $5,000.00 |
| WF 4606 | RH 3505 | 4/22/2020 | $5,000.00 |
| WF 4606 | RH 3505 | 6/30/2020 | $5,000.00 |

| WF 4606 | RH 3505 | 2/1//2021 | $10,000.00 |
|---|---|---|---|
| | | **Gross Deposits:** | **$30,000.00** |
| | | **Net Deposits** | **$23,879.64** |

    g.   In February 2021, the portfolio's starting value in February was approximately $412,638.14.  That month, the portfolio was transferred in its entirety to a TD Ameritrade account ending in 5235.

***TD Ameritrade Account in the name of Leonard Vandenberg and Christy Vandenberg* (TD 5235)**

126.    TD Ameritrade is a stockbroker that offers an electronic trading platform for the trade of financial assets.  A TD Ameritrade account ending in 5235 (TD 5235) was discovered in the name of Leonard Vandenberg and Christy Vandenberg.  The application for TD 5235 was submitted on or about February 1, 2008.

127.    According to an account statement from TD 5235 dated 1/1/21-2/28/21, the account's starting balance was $0.00.

128.    Account statements from JP 7426 and TD 5235 were analyzed to determine what transactions occurred between these accounts.  The transactions between the accounts are summarized below (with red text indicating transfers out of TD 5235):

| Payer | Payee | Date | Amount |
|---|---|---|---|
| JP 7426 | TD 5235 | 2/2/2021 | $ 20,000.00 |
| JP 7426 | TD 5235 | 2/3/2021 | $ 50,000.00 |
| JP 7426 | TD 5235 | 2/11/2021 | $ 50,000.00 |
| JP 7426 | TD 5235 | 2/23/2021 | $ 20,000.00 |
| JP 7426 | TD 5235 | 3/1/2021 | $ 50,000.00 |
| JP 7426 | TD 5235 | 6/23/2021 | $ 100,000.00 |
| TD 5235 | JP 7426 | 7/2/2021 | $ (160,000.00) |
| TD 5235 | JP 7426 | 7/22/2021 | $ (190,000.00) |
| JP 7426 | TD 5235 | 8/2/2021 | $ 50,000.00 |
| JP 7426 | TD 5235 | 9/3/2021 | $ 100,000.00 |

| | | | |
|---|---|---|---|
| JP 7426 | TD 5235 | 10/18/2021 | $ 200,000.00 |
| TD 5235 | JP 7426 | 10/26/2021 | $ (250,000.00) |
| TD 5235 | JP 7426 | 10/27/2021 | $ (45,000.00) |
| JP 7426 | TD 5235 | 1/31/2022 | $ 50,000.00 |
| JP 7426 | TD 5235 | 5/13/2022 | $ 130,000.00 |
| JP 7426 | TD 5235 | 6/10/2022 | $ 150,000.00 |
| | | Gross Deposits | $ 970,000.00 |
| | | Net Deposits | $ 325,000.00 |

129.     Account statements from CB 0472 and TD 5235 were analyzed to determine what transactions occurred between these accounts. The transactions between the accounts are summarized below (with red text indicating transfers out of TD 5235):

| Payer | Payee | Date | Amount |
|---|---|---|---|
| CB 0472 | TD 5235 | 2/3/2021 | $50,000.00 |
| CB 0472 | TD 5235 | 2/11/2021 | $50,000.00 |
| CB 0472 | TD 5235 | 8/20/2021 | $10,000.00 |
| TD 5235 | CB 0472 | 12/28/2021 | ($50,000.00) |
| CB 0472 | TD 5235 | 1/25/2022 | $50,000.00 |
| TD 5235 | CB 0472 | 1/31/2022 | ($50,000.00) |
| TD 5235 | CB 0472 | 6/16/2022 | ($100,000.00) |
| TD 5235 | CB 0472 | 7/1/2022 | ($50,000.00) |
| | | Gross Deposits: | $160,000.00 |
| | | Net Deposits: | ($90,000.00) |

130.     Based on analysis performed by FBI personnel, the transfers between TD 5235 and both JP 7426 (the operating account of Corclyn Enterprises) and CB 0472 (one of the operating accounts of SDGTEX) did not appear to serve any legitimate business purpose.[13] Rather, transfers between the operating accounts and the brokerage account appear to comingle the COVID relief loan proceeds with the profits of the businesses while extracting the value of

---

[13] The transactions did not, for example, provide operating capital when the operating account balances were low; nor were they necessary to cover capital expenditures or payroll expenses.

the proceeds into TD 5235 for the personal benefit of Leonard and/or Christy Vandenberg.[14]  I submit that, based on this information and the other facts contained in this Affidavit, there is probable cause to believe that these transactions violated 18 U.S.C. § 1956(a)(1)(B)(i), that is, that they were "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  I further submit that there is probable cause to believe that each of these transactions violated 18 U.S.C. § 1957 in that each of the transactions constituted an instance of Leonard and/or Christy Vandenberg "knowingly engag[ing] in or attempt[ing] to engage in a transaction in criminally derived property of a value greater than $10,000" of property that was "derived from specified unlawful activity."

131.   A TD Ameritrade account statement showed the total value of TD 5235 to be approximately $392,840.35 as of December 31, 2022.  Based on the facts set out in this Affidavit, I submit that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy, and/or property involved in money laundering or property traceable to money laundering.

---

[14] This would be contrary to the representation in the LA&A form stating the following:

> Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

*See* Exhibit 7 at 5.  SBA records indicate that neither Leonard nor Christy Vandenberg, nor anyone else representing any of the borrowers, requested prior written consent from the SBA to authorize distributions of the borrowers' assets to the brokerage accounts.

***TD Ameritrade Account in the name of Leonard Vandenberg and Christy Vandenberg 8240***

132.    A TD Ameritrade account ending in 8240 (TD 8240) was discovered in the name of Leonard Vandenberg and Christy Vandenberg and was analyzed by FBI personnel.  The application for TD 8240 appeared to be signed via Docusign by Leonard C. Vandenberg and Christy J. Vandenberg on or about May 4, 2022.  The investment advisor was listed as Fisher Investments.

133.    Numerous financial instruments totaling approximately $482,671.39 in value were transferred into TD 8240 from TD 5235 on May 11, 2022.  Also on May 11, 2022, approximately $234,697.95 in cash or similar financial instruments was transferred into TD 8240 from TD 5235.

134.    As of September 2022, the above-mentioned transfers were the only transfers made into TD 8240.

135.    A TD Ameritrade account statement showed the total value of TD 8240 to be approximately $712,871.37 as of December 31, 2022.  Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy, and/or property involved in money laundering or property traceable to money laundering.

***TD Ameritrade Account in the name of Leonard Vandenberg 3730***

136.    A TD Ameritrade account ending in 3730 (TD 3730) was discovered in the name of Leonard Vandenberg and was analyzed by FBI personnel.  The application for TD 3730 was submitted on or about April 7, 2022.

137.    Account statements from April 2022 show that approximately two transfers from TD 5235 were made to TD 3730, totaling $50,000.00.

138.    Account statements from JP 7426, JP 7412, CB 0472, and TD 3730 were analyzed to determine what transactions occurred between these accounts.  The transactions between these accounts are summarized below (with red text indicating transfers out of TD 3730):

| Payer | Payee | Date | Amount |
|---|---|---|---|
| CB 0472 | TD 3730 | 4/19/2022 | $100,000.00 |
| CB 0472 | TD 3730 | 4/20/2022 | $120,000.00 |
| JP 7412 | TD 3730 | 4/21/2022 | $206,543.00 |
| JP 7426 | TD 3730 | 4/25/2022 | $250,000.00 |
| JP 7426 | TD 3730 | 4/26/2022 | $250,000.00 |
| JP 7426 | TD 3730 | 4/27/2022 | $250,000.00 |
| JP 7426 | TD 3730 | 5/3/2022 | $250,000.00 |
| JP 7426 | TD 3730 | 5/31/2022 | $250,000.00 |
| JP 7412 | TD 3730 | 6/17/2022 | $125,000.00 |
| JP 7426 | TD 3730 | 6/21/2022 | $200,000.00 |
| TD 3730 | JP 7426 | 7/12/2022 | ($100,000.00) |
| TD 3730 | CB 0472 | 7/21/2022 | ($150,000.00) |
| TD 3730 | CB 0472 | 8/18/2022 | ($75,000.00) |
| TD 3730 | CB 0472 | 8/23/2022 | ($100,000.00) |
| JP 7426 | TD 3730 | 9/7/2022 | $250,000.00 |
| TD 3730 | CB 0472 | 9/7/2022 | ($60,000.00) |
| JP 7426 | TD 3730 | 9/15/2022 | $250,000.00 |
| CB 0472 | TD 3730 | 9/16/2022 | $200,000.00 |
| CB 0472 | TD 3730 | 9/19/2022 | $200,000.00 |
| TD 3730 | CB 0472 | 10/20/2022 | ($104,500.00) |
| TD 3730 | JP 7426 | 11/10/2022 | ($50,000.00) |
| TD 3730 | JP 7426 | 12/2/2022 | ($100,000.00) |
| TD 3730 | JP 7426 | 12/30/2022 | ($50,000.00) |
| | | Gross Deposits: | $2,901,543.00 |
| | | Net Deposits: | $2,112,043.00 |

139.    Based on the funds which would have normally been received from the operations of Something Different Restaurants associated with the account (i.e., setting aside the PPP and EIDL proceeds), JP 7426 would have only been able to fund the transfer of $250,000.00 made to

TD Ameritrade on April 25, 2022.  The remaining $1,480,000.00 in transfers would have resulted in a negative bank account balance beginning April 26, 2022.

140.    Based on analysis performed by FBI personnel, the transfers between TD 3730 and both JP 7426 and CB 0472 did not appear to serve any legitimate business purpose.[15] Rather, transfers between the operating accounts and the brokerage account appear to comingle the COVID relief loan proceeds with the profits of the businesses while extracting the value of the proceeds into TD 3730 for the personal benefit of Leonard and/or Christy Vandenberg.[16]  I submit that, based on this information and the other facts contained in this Affidavit, there is probable cause to believe that these transactions violated 18 U.S.C. § 1956(a)(1)(B)(i), that is, that they "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  I further submit that there is probable cause to believe that each of these transactions violated 18 U.S.C. § 1957 in that each of the transactions constituted an instance of Leonard and/or Christy Vandenberg "knowingly engag[ing] in or attempt[ing] to engage in a transaction in criminally derived

---

[15] The transactions did not, for example, provide operating capital when the operating account balances were low; nor were they necessary to cover capital expenditures or payroll expenses.

[16] This would be contrary to the representation in the LA&A form stating the following:

> Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

*See* Exhibit 7 at 5.  SBA records indicate that neither Leonard nor Christy Vandenberg, nor anyone else representing any of the borrowers, requested prior written consent from the SBA to authorize distributions of the borrowers' assets to the brokerage accounts.

property of a value greater than $10,000" of property that was "derived from specified unlawful activity."

141.    A TD Ameritrade account statement showed the total value of TD 3730 to be approximately $1,758,429.00 as of December 31, 2022.  Based on the facts set out in this Affidavit, I submit that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy as well as property involved in money laundering or property traceable to money laundering.

**TD Ameritrade Account in the name of B.V. 8585**

142.    A TD Ameritrade account ending in 8585 (TD 8585) was discovered in the name of B.V. and was analyzed by FBI personnel.  The application for TD 8585 was submitted on or about November 14, 2022.  The application lists Leonard Vandenberg as the parent and custodian.

143.    Account statements from November 2022 show that one transfer from TD 3730 was made to TD 8585, totaling $6,000.00.  Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy as well as property involved in money laundering or property traceable to money laundering.

**TD Ameritrade Account in the name of D.V. 1306**

144.    A TD Ameritrade account ending in 1306 (TD 1306) was discovered in the name of D.V. and was analyzed by FBI personnel.  The application for TD 1306 was submitted on or about November 14, 2022.  The application lists Leonard Vandenberg as the parent and custodian.

145.    Account statements from November-December 2022 show that one transfer from TD 3730 was made to TD 1306, totaling $6,000.00.  Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy as well as property involved in money laundering or property traceable to money laundering.

**TD Ameritrade Account in the name of B.V. 7971**

146.    A TD Ameritrade account ending in 7971 (TD 7971) was discovered in the name of B.V. and was analyzed by FBI personnel.  The application for TD 7971 was submitted on or about November 14, 2022.  The application lists Leonard Vandenberg as the parent and custodian.

147.    Account statements from November-December 2022 show that one transfer from TD 3730 was made to TD 7971, totaling $6,000.00.  Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that that the entirety of these funds constitute proceeds of wire fraud, bank fraud, and conspiracy as well as property involved in money laundering or property traceable to money laundering.

**TD Ameritrade Account in the name of J.V. 8295**

148.    A TD Ameritrade account ending in 8295 (TD 8295) was discovered in the name of J.V. and was analyzed by FBI personnel.  The application for TD 8295 was submitted on or about November 14, 2022.  The application lists Leonard Vandenberg as the parent and custodian.

149.    Account statements from November-December 2022 show that one transfer from TD 3730 was made to TD 8295, totaling $6,000.00.  Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that that the entirety of these funds constitute

proceeds of wire fraud, bank fraud, and conspiracy as well as property involved in money laundering or property traceable to money laundering.

***Piper PA-24-250 Aircraft***

150.    Records reviewed by FBI personnel indicate that Leonard Vandenberg and Christy Vandenberg own a Piper PA-24-250 Aircraft, serial number 24-3660, tail number N8404P.  Records reviewed by FBI also indicate that Leonard Vandenberg has an active pilot's license.

a.  Records from USAlliance show that payments of $4,350.00, on July 2, 2019, and $83,000.00, on July 15, 2019, were made from JP 7426 (the Corclyn Enterprises business checking account) to AEROtitle to purchase the Piper PA-24-250 Aircraft.  The records indicate that on July 15, 2019, AEROtitle disbursed $87,000 "to the seller's direction" and $350.00 to AEROtitle as a "buyer's escrow fee."

b.  Records from USAlliance indicate that on or about July 5, 2019, Leonard Vandenberg applied for a loan to help finance the purchase of a 1964 Piper PA-24-250 aircraft, serial number 24-3660, tail number N8404P.

c.  The aircraft's estimated value at the time of the loan application was listed as $87,000.00.  Christy Vandenberg was listed as a co-borrower on the loan application.

d.  The loan was funded to WF 4606 on or about July 26, 2019 for $73,000.00 (i.e., after the sale had actually occurred).

e. Loan application documents indicate that the aircraft would be flown by Leonard Vandenberg and hangered at KPRZ.  KPRZ is the airport call sign for Portales Municipal Airport, located in Portales, NM.

f. Records obtained from JP Stone show monthly payments of $120.00 made via check from JP 7426 to Portales Municipal Airport.

g. According to Portales Municipal Airport's website, hangars may be rented for $120.00 per month.

h. From September 2019 to May 2022, monthly payments totaling approximately $19,452.18 were made from WF 4606 to pay down the USAlliance loan.[17]

i. On or about May 17, 2022, JP 7426 received approximately $800,000.00 from SBA in EIDL proceeds.  On or about the same day these funds were received in JP 7426, a transfer in the amount of $63,980.33 was sent to USAlliance Financial from JP 7426.  According to documents obtained from USAlliance, the transferred $63,980.33 went to pay off the above-mentioned aircraft loan.

151. Based on the facts set out in this Affidavit, I submit that the 1964 Piper PA-24-250 aircraft, serial number 24-3660, tail number N8404P constitutes proceeds of wire fraud, bank fraud, and conspiracy, as well as property involved in money laundering or property traceable to money laundering.  Specifically, the $63,980.33 transaction to pay off the outstanding aircraft loan was funded substantially with EIDL proceeds derived from materially false statements and pretenses included in the loan application materials.  The EIDL application materials were submitted using interstate wires.  There is therefore probable cause to believe that

---

[17] Thus, it appears that loan proceeds from the USAlliance loan, which were disbursed into WF 4606, were then used to make payments on the same USAlliance loan.

the $63,980.33 transaction used to pay off the loan included proceeds of wire fraud in excess of $10,000 and therefore violated 18 U.S.C. § 1957(a).

## **CONCLUSION**

152.    Based on the facts set out in this Affidavit, I submit that there is probable cause to believe that the property listed in paragraph 5 comprises proceeds of wire fraud, bank fraud, and conspiracy in violation of 18 U.S.C. §§ 1343, 1344, and 1349.  I further submit that the property set out in paragraph 5 comprises property involved in money laundering and/or property traceable to money laundering.in violation of 18 U.S.C. § 1956 and 1957.  Based on the forfeiture statutes outlined in this Affidavit, I submit that the property identified in paragraph 5 is subject to civil and criminal forfeiture and may therefore be seized by the United States pursuant to a Seizure Warrant.

153.    Based on my training and experience, I believe that efforts to restrain or enjoin the property pursuant to 21 U.S.C. § 853(e), as incorporated by 18 U.S.C. § 982(b)(1), would be insufficient to maintain the property for forfeiture.  The assets held in the brokerage accounts identified in this Affidavit are highly liquid and would therefore be easy to dissipate and difficult to trace.  The 1964 Piper PA-24-250 aircraft, serial number 24-3660, tail number N8404P is a functioning airplane and can be moved long distances with little notice, including beyond the jurisdiction of the United States.   Furthermore, the property constitutes evidence of the criminal offenses described in this Affidavit and therefore should be maintained in the custody of the United States to facilitate its evidentiary use, as well as its forfeiture.

154.    I therefore request the Court issue the requested Seizure Warrant as authorized under Rule 41 of the Federal Rules of Criminal Procedure and the forfeiture provisions identified in this Affidavit.

## REQUEST FOR SEALING

155.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application.  I believe that sealing these documents is necessary because the information included therein is relevant to an ongoing investigation into criminal activity that is not yet complete.  Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

156.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

157.    This Affidavit was reviewed and approved by AUSA Taylor Hartstein on March 18, 2023.

Respectfully submitted,

Robert T. Balint
Special Agent
Federal Bureau of Investigation

Electronically signed and telephonically sworn on March 20, 2023

HONORABLE JOHN F. ROBBENHAAR
UNITED STATES MAGISTRATE JUDGE

**Exhibit 1A: Summary of Identified PPP/EIDL Loans**

| Reference Number | Business | Loan Number | Date Deposited (per bank statements) | Amount | Type | JP Stone 7426 in the name of Corclyn Enterprises | JP Stone 0939 in the name of SDGTEX Restaurants | JP Stone 7412 in the name of LCV Real Estate | City Bank 0472 in the name of Something Different Grill | City Bank 0686 in the name of SDGTEX Restaurants |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Corclyn Enterprises Inc. | 346009 | 4/17/2020 | $ 300,000.00 | PPP | $ 300,000.00 | | | | |
| 2 | SDGTEX Restaurants Inc. | 346242 | 5/26/2020 | $ 50,000.00 | PPP | | $ 50,000.00 | | | |
| 3 | Corclyn Enterprises Inc. | 8227677400 | 4/13/2020 | $ 10,000.00 | EIDL | $ 10,000.00 | | | | |
| 3 | Corclyn Enterprises Inc. | 8227677400 | 5/19/2020 | $ 149,900.00 | EIDL | $ 149,900.00 | | | | |
| 3 | Corclyn Enterprises Inc. | 8227677400 | 4/22/2022 | $ 1,050,000.00 | EIDL | $ 1,050,000.00 | | | | |
| 3 | Corclyn Enterprises Inc. | 8227677400 | 5/17/2022 | $ 800,000.00 | EIDL | $ 800,000.00 | | | | |
| 4 | LCV Real Estate | 8464537408 | 4/16/2020 | $ 2,000.00 | EIDL | | | $ 2,000.00 | | |
| 4 | LCV Real Estate | 8464537408 | 5/29/2020 | $ 11,000.00 | EIDL | | | $ 11,000.00 | | |
| 4 | LCV Real Estate | 8464537408 | 4/12/2022 | $ 13,000.00 | EIDL | | | $ 13,000.00 | | |
| 4 | LCV Real Estate | 8464537408 | 5/10/2022 | $ 250,900.00 | EIDL | | | $ 250,900.00 | | |
| 5 | SDGTEX Restaurants Inc. | 3600038585 | 4/16/2020 | $ 10,000.00 | EIDL | | | | | $ 10,000.00 |
| 5 | SDGTEX Restaurants Inc. | 3600038585 | 5/19/2020 | $ 149,900.00 | EIDL | | | | $ 149,900.00 | |
| 5 | SDGTEX Restaurants Inc. | 3600038585 | 4/18/2022 | $ 349,000.00 | EIDL | | | | $ 349,000.00 | |
| | Totals | | | $ 3,145,700.00 | | $ 2,309,900.00 | $ 50,000.00 | $ 276,900.00 | $ 498,900.00 | $ 10,000.00 |

**Exhibit 1B: Summary of Bank and Trading Accounts**

| Reference Number | Financial Institution | Financial Institution Type | Account Number | Designation in Affidavit | Account Name (Bank) Account Holder (Brokerage) | Account Type |
|---|---|---|---|---|---|---|
| 1 | James Polk Stone Community Bank | Bank | ■ | JP 7426 | Corclyn Enterprises DBA Something Different Grill | Business Checking DDA |
| 2 | James Polk Stone Community Bank | Bank | ■ | JP 7412 | LCV Real Estate LLC | Business Checking DDA |
| 3 | James Polk Stone Community Bank | Bank | ■ | JP 3360 | Christy J. Vandenberg or Leonard Vandenberg | FASTRAC Checking DDA |
| 4 | James Polk Stone Community Bank | Bank | ■ | JP 0939 | SDGTex Restaurants Inc. | Business Checking DDA |
| 5 | City Bank | Bank | ■ | CB 0472 | Something Different Grill | Commerical Interest Checking |
| 6 | City Bank | Bank | ■ | CB 0686 | Something Different Grill | Business Checking DDA |
| 7 | Wells Fargo Bank N.A. | Bank | ■ | WF 4606 | Custom Management Checking | Personal Checking DDA |
| 8 | Robinhood | Trading | ■ | RH 3505 | Leonard Vandenberg | Margin - Individual |
| 9 | TD Ameritrade | Trading | ■ | TD 3730 | Leonard Vandenberg | Individual |
| 10 | TD Ameritrade Investment Advisor - Fisher Investments | Trading | ■ | TD 8240 | Leonard Vandenberg | Joint Tenants w/ rights of survivorship |
| 11 | TD Ameritrade | Trading | ■ | TD 5235 | Leonard Vandenberg | Joint Tenants w/ rights of survivorship |
| 12 | TD Ameritrade | Trading | ■ | TD 8585 | Leonard Vandenberg | Roth IRA |
| 13 | TD Ameritrade | Trading | ■ | TD 1306 | Leonard Vandenberg | Roth IRA |
| 14 | TD Ameritrade | Trading | ■ | TD 7971 | Leonard Vandenberg | Roth IRA |
| 15 | TD Ameritrade | Trading | ■ | TD 8295 | Leonard Vandenberg | Roth IRA |

# EXHIBIT 1C



**Property for Seizure**

**PPP Loan**
$300,000
4/17/20

**EIDL Funds**
$22,000
(3 loans) from
4/13/20 – 4/18/20

**PPP Loan**
$50,000
5/26/20

**EIDL Funds**
$310,800
(3 loans) from
5/19/20 – 5/29/20

**EIDL Funds**
$1,412,000
(3 loans) from
4/12/22 – 4/22/22

**EIDL Funds**
$1,050,900
(2 loans) from
5/10/22 – 5/19/22

**Total**
**$3,145,700**

**JP Stone x7426**
*Corclyn Enterprises*
Business Checking
Rec'd $2,309,900
(5 Loans) from
4/17/20 – 5/17/22

**JP Stone x0939**
*SDTEX Restaurant*
Business Checking
Rec'd $50,000
5/26/20

**JP Stone x7412**
*LCV Real Estate*
Business Checking
Rec'd $276,900
(4 Loans) from
4/12/20 – 5/29/22

**City Bank x0472**
*Something Different Grill*
Business Checking
Rec'd $498,900 total (2
Loans) on
5/19/20 and 4/18/22

**City Bank x0686**
*Something Different Grill*
Business Checking
Rec'd $10,000
4/16/20

**Wells Fargo x4606**
*Leonard Vandenberg*
Personal Checking

**JP Stone x3360**
*Christy & Leonard Vandenberg*
Personal Checking
Net Bank Transfers
$468,539.98 from
4/1/2020 -
10/14//2022

**Robinhood x3505**
*Individual*
Rec'd $360,000
(14 Transfers) from
3/20/20-2/1/2021

**Piper PA-24-250**
*Aircraft*
Paid off remaining
balance of $63,980.33
on 5/17/22

**Aircraft's Approximate Retail Value: $84,000**

**TD Ameritrade x3730**
*Individual*
Approx. value as of
Dec. 2022 =
$1,758,429.00

**TD Ameritrade x5235**
*Joint Tenants…*
Approx. value as of
Dec. 2022 =
$392,840.35

**TD Ameritrade x8240**
*Joint Tenants…*
Approx. value as
of Dec. 2022 =
$712,871.37

**TD Ameritrade x1306**
*Roth IRA*
Rec'd $6,000
on 12/8/22

**TD Ameritrade x7971**
*Roth IRA*
Rec'd $6,000
on 12/8/22

**TD Ameritrade x8295**
*Roth IRA*
Rec'd $6,000
on 12/8/22

**TD Ameritrade x8585**
*Roth IRA*
Rec'd $6,000
on 12/8/22

**TD Ameritrade Accounts: $2,888,140.72**
**as of 12/31/2022**



**Paycheck Protection Program**
**Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Non-Profit □ Vet Org □ Tribal □ Ind. Cont. □ Self Employed □ | | |
|---|---|---|
| **Business Legal Name** | **DBA or Tradename if applicable** | |
| Corelyn Enterprises Inc. | Something Different Grill | |
| **Business Primary Address** | **Business TIN (EIN,SSN)** | **Business Phone** |
| PO Box 1264 | 5757996633 | |
| Portales, NM 88130 | **Primary Contact** | **Email Address** |
| | Leonard Vandenberg | lcv1971@gmail.com |

| Average Monthly Payroll: | $138240 | X 2.5 equals Loan Amount: | $345601 | Number of Jobs | 120 |
|---|---|---|---|---|---|

| Purpose of the loan (select more than one): | ■ Payroll  ■ Rent / Mortgage Interest  ■ Utilities  □ Other (explain): |
|---|---|

**Applicant Ownership**

List all owners of Applicant with greater than 20% ownership stakes. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN,SSN) | Address |
|---|---|---|---|---|
| Leonard Vandenberg | President | 50 | | |
| Christy Vandenberg | Secretary | 50 | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the Business or any owner presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | □ | ■ |
| 2. | Has the Business, any of its owners, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | □ | ■ |
| 3. | Is the Business or any owner an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | □ | ■ |
| 4. | Has the Business received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | □ | ■ |

*Applicants who are individuals and all 20% or greater owners of the business must answer the following questions. If questions (5) or (6) are answered "Yes" or question (7) is answered "No", the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 5. | Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, on probation or parole? | □ | ■ |
| | Initial here to confirm your response to question 5 → | LCV | |
| 6. | Within the last 7 years, for any felony or misdemeanor for a crime against a minor, have you: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | □ | ■ |
| | Initial here to confirm your response to question 6 → | LCV | |
| 7. | ■ I am a U.S. Citizen  OR  □ I have Lawful Permanent Resident status  □ No | | |
| | Initial here to confirm your response to question 7 → | LCV | |

1



**Paycheck Protection Program**
**Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

### REPRESENTATIONS AND AUTHORIZATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals and all Associates: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

### CERTIFICATIONS

The Business and each 20% or greater owner must certify in good faith to all of the below by **initialing** next to each one:

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

Documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight week period following this loan will be provided to the lender.

Loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities. Due to likely high subscription, it is anticipated that not more than twenty-five percent (25%) of the forgiven amount may be for non-payroll costs.

During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under this program.

I further certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the lender will calculate the eligible loan amount using tax documents I have submitted. I affirm that these tax documents are identical to those I submitted to the IRS. I also understand, acknowledge and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____
Signature of Authorized Representative of Business

LEONARD  VANDENBERG
Print Name

4.2.20
Date

President
Title

_____
Signature of Owner of Applicant Business

CHRISTY  VANDENBERG
Print Name

4-2-20
Date

Secretary
Title

2



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

OMB Control No. 3245-0407
Expiration date: 10/31/2020

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| CORCLYN ENTERPRISES INC. | SOMETHING DIFFERENT GRILL |

| Business Address | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| P.O. BOX 1264 | | 575-356-1205 |
| PORTALES, NM 88130 | Primary Contact | E-mail Address |
| | LEONARD VANDENBERG | LCV1971@GMAIL.COM |

**SBA PPP Loan Number:** 62944470-10

**Lender PPP Loan Number:** 346009

**PPP Loan Amount:** $300,000.00

**PPP Loan Disbursement Date:** 04/16/2020

**Employees at Time of Loan Application:** 120

**Employees at Time of Forgiveness Application:** 98

**EIDL Advance Amount:** $10,000.00

**EIDL Application Number:** 3600036687

**Payroll Schedule:** The frequency with which payroll is paid to employees is:

☐ Weekly    ☒ Biweekly (every other week)    ☐ Twice a month    ☐ Monthly    ☐ Other _____

**Covered Period:** _____ to _____

**Alternative Payroll Covered Period, if applicable:** 05/01/2020    to  06/25/2020

If Borrower (together with affiliates, if applicable) received PPP loans in excess of $2 million, check here: ☐

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs:                                                                          $309,442.83

Line 2.  Business Mortgage Interest Payments:                                 _____

Line 3.  Business Rent or Lease Payments:                                        _____

Line 4.  Business Utility Payments:                                                    _____

Potential Forgiveness Amounts
Line 5.  Add the amounts on lines 1, 2, 3, and 4:                              $309,442.83

Line 6.  PPP Loan Amount:                                                                 $300,000.00

Line 7.  Payroll Cost 60% Requirement (divide Line 1 by 0.60):         $515,738.05

Forgiveness Amount
Line 8.  Forgiveness Amount (enter the smallest of Lines 5, 6, and 7):   $300,000.00



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**
The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

The Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments.

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

The tax documents I have submitted to the Lender are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing** at least **ONE** of the following two items:

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

_____
Signature of Authorized Representative of Borrower

LEONARD VANDENBERG
Print Name
SBA Form 3508EZ (06/20)
Page 2

11-27-20
Date

PRESIDENT
Title



## Paycheck Protection Program
### PPP Loan Forgiveness Application Form 3508EZ

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position |
|---|---|---|
| | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | 1 |
| Gender | M=Male; F=Female; X=Not Disclosed | M |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5 |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 20 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Paycheck Protection Program**
**Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC ☐ Independent contractor ☐ Eligible self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable |
|---|---|
| **Business Legal Name** SDGTEX Restaurants Inc. | Something Different Grill |

| Business Address | | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| PO Box 1264 | | | 5757996633 |
| Portales NM 88130 | | Primary Contact | Email Address |
| | | Leonard Vandenberg | lcv1971@gmail.com |

| Average Monthly Payroll: | $50915 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $127288 | Number of Jobs: | 36 |
|---|---|---|---|---|---|

Purpose of the loan (select more than one): ☑Payroll ☐Rent / Mortgage Interest ☑Utilities ☐Other (explain):

### Applicant Ownership

List all owners of Applicant with greater than 20% ownership stakes. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Leonard Vandenberg | President | 50 | | |
| Christy Vandenberg | Secratary | 50 | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Business or any owner presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☑ |
| 2. Has the Business, any of its owners, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☑ |
| 3. Is the Business or any owner an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | ☐ | ☑ |
| 4. Has the Business received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☑ |

*Applicants who are individuals and all 20% or greater owners of the business must answer the following questions. If questions (5) or (6) are answered "Yes" or question (7) is answered "No", the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, on probation or parole?  *Initial here to confirm your response to question 5 →* | ☐ | ☑  *cv CW* |
| 6. Within the last 7 years, for any felony or misdemeanor for a crime against a minor, have you: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?  *Initial here to confirm your response to question 6 →* | ☐ | ☑  *cv CW* |
| 7. ☑ I am a U.S. Citizen OR ☐ I have Lawful Permanent Resident status    ☐ No   *Initial here to confirm your response to question 7 →* | | *cv CW* |



**Paycheck Protection Program**
**Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

### REPRESENTATIONS AND AUTHORIZATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals and all Associates: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

### CERTIFICATIONS

The Business and each 20% or greater owner must certify in good faith to all of the below by initialing next to each one:

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

Documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight week period following this loan will be provided to the lender.

Loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities. Due to likely high subscription, it is anticipated that not more than twenty-five percent (25%) of the forgiven amount may be for non-payroll costs.

During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under this program.

I further certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the lender will calculate the eligible loan amount using tax documents I have submitted. I affirm that these tax documents are identical to those I submitted to the IRS. I also understand, acknowledge and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

| | |
|---|---|
| Signature of Authorized Representative of Business | 05-13-2020 |
| | Date |
| **Leonard Vandenberg** | **President** |
| Print Name | Title |
| Signature of Owner of Applicant Business | 05-13-2020 |
| | Date |
| **Christy Vandenberg** | **Secretary** |
| Print Name | Title |

2

SBA Form 2483 (03/20)



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

OMB Control No. 3245-0407
Expiration date: 10/31/2020

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable | |
|---|---|---|
| SDGTEX RESTAURANTS INC. | SOMETHING DIFFERENT GRILL | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| P.O. BOX 1264 | | 575-799-6633 |
| | **Primary Contact** | **E-mail Address** |
| PORTALES, NM 88130 | LEONARD VANDENBERG | lcv1971@gmail.com |

SBA PPP Loan Number: 70383874-03                Lender PPP Loan Number: 346242

PPP Loan Amount: 50,000.00                PPP Loan Disbursement Date: 05/18/2020

Employees at Time of Loan Application: 36        Employees at Time of Forgiveness Application: 41

EIDL Advance Amount: _____        EIDL Application Number: _____

Payroll Schedule: The frequency with which payroll is paid to employees is:

☒ Weekly        ☐ Biweekly (every other week)        ☐ Twice a month        ☐ Monthly        ☐ Other _____

Covered Period: 05/18/2020 _____ to 7\13\2020 _____

Alternative Payroll Covered Period, if applicable: _____ to _____

If Borrower (together with affiliates, if applicable) received PPP loans in excess of $2 million, check here: ☐

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1. Payroll Costs:                                                                122,284.13

Line 2. Business Mortgage Interest Payments:                                        _____

Line 3. Business Rent or Lease Payments:                                            _____

Line 4. Business Utility Payments:                                                  _____

Potential Forgiveness Amounts
Line 5. Add the amounts on lines 1, 2, 3, and 4:                                     122,284.13

Line 6. PPP Loan Amount:                                                             50,000.00

Line 7. Payroll Cost 60% Requirement (divide Line 1 by 0.60):                        203,806.88

Forgiveness Amount
Line 8. Forgiveness Amount (enter the smallest of Lines 5, 6, and 7):                50,000.00



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**
The Authorized Representative of the Borrower certifies to all of the below by initialing next to each one.

The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

The Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments.

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

The tax documents I have submitted to the Lender are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by initialing at least ONE of the following two items:

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

_____           12-15-20
Signature of Authorized Representative of Borrower      Date

LEONARD  VANDENBELT                           President
_____           _____
Print Name                                   Title

SBA Form 3508EZ (06/20)
Page 2



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ**

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | | |
| Gender | M=Male; F=Female; X=Not Disclosed | | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 20 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Rapid Intake Form Data Lookup**

Application Number 3600036687
Name Corclyn Enterprises Inc.
Business Name
IP Address 23.252 215 243, 23.252.215.243

| FIELD # | FORM NAME | TYPE | REQUIRED | VALUE | TIMESTAMP |
|---|---|---|---|---|---|
| | **PAGE 1** | | | | |
| 1 | Eligibility Requirements Applicant Type | Radio | Yes | Applicant is a business with not more than 500 employees. | 3/30/2020 12:47 PM |
| HEADER: Review and Check all of the Following: Applicant must review and check all of the following (If Applicant is unable to check all of the following, Applicant is not an Eligible Entity) | | | | | |
| 2 | Applicant is not engaged in any illegal activity (as defined by Federal guidelines). | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 3 | No principal of the Applicant with a 50 percent or greater ownership interest is more than sixty (60) days delinquent on child support obligations. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 4 | Applicant is not an agricultural enterprise (e.g., farm), other than an aquaculture enterprise, agricultural cooperative, or nursery. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 5 | Applicant does not present live performances of a prurient sexual nature or derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 6 | Applicant does not derive more than one-third of gross annual revenue from legal gambling activities. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 7 | Applicant is not in the business of lobbying. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 8 | Applicant cannot be a state, local, or municipal government entity and cannot be a member of Congress. | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| | **PAGE 2** | | | | |
| HEADER: Business Information | | | | | |
| 9 | Business Legal Name * | Text | Yes | Corclyn Enterprises Inc. | 3/30/2020 12:47 PM |
| 10 | Trade Name * | Text | Yes | Something Different Grill | 3/30/2020 12:47 PM |
| 11 | EIN/SSN for Sole Proprietorship * | Text | Yes | | 3/30/2020 12:47 PM |
| 12 | Organization Type * | Picklist | Yes | S-Corporation | 3/30/2020 12:47 PM |
| 13 | Is the Applicant a Non-Profit Organization? * | Radio | Yes | No | 3/30/2020 12:47 PM |
| 14 | Is the Applicant a Franchise? * | Radio | Yes | No | 3/30/2020 12:47 PM |
| 15 | Gross Revenues for the Twelve(12) Month Prior to the Date of the Disaster (January 31, 2020) * | Text | Yes | $4,100,000.00 | 3/30/2020 12:47 PM |
| 16 | Cost of Goods Sold for the Twelve(12) Month Prior to the Date of the Disaster (January 31, 2020) * | Text | Yes | $1,234,354.00 | 3/30/2020 12:47 PM |
| 17 | Rental Properties (Rental and Commercial) Only - Lost Rents Due to the Disaster | Text | No | NULL | 3/30/2020 12:47 PM |
| 18 | Non-Profit or Agricultural Enterprise Cost of Operation for the Twelve(12) Month Prior to the Date of the Disaster (January 31, 2020) | Text | No | $0.00 | 3/30/2020 12:47 PM |
| 19 | Compensation From Other Sources Received as Result of the Disaster | Text | No | $0.00 | 3/30/2020 12:47 PM |
| 20 | Provide Brief Description of Other Compensation Sources | Text | No | NULL | 3/30/2020 12:47 PM |
| 21 | Primary Business Address (Cannot be P.O. Box) * | Text | Yes | 405 West 4th | 3/30/2020 12:47 PM |
| 22 | City * | Text | Yes | Portales | 3/30/2020 12:47 PM |
| 23 | State * | Picklist | Yes | NM | 3/30/2020 12:47 PM |
| 24 | County | Text | No | New Mexico | 3/30/2020 12:47 PM |
| 25 | ZIP * | Text | Yes | 88130 | 3/30/2020 12:47 PM |
| 26 | Business Phone * | Text | Yes | (575) 799-6633 | 3/30/2020 12:47 PM |
| 27 | Alternative Business Phone | Text | No | NULL | 3/30/2020 12:47 PM |
| 28 | Business Fax | Text | No | NULL | 3/30/2020 12:47 PM |
| 29 | Business Email | Text | No | lcv1971@gmail.com | 3/30/2020 12:47 PM |
| 30 | Date Business Established * | Date | Yes | 10/15/1999 | 3/30/2020 12:47 PM |
| 31 | Current Ownership Since * | Text | Yes | 10/15/1999 | 3/30/2020 12:47 PM |
| 32 | Business Activity * | Picklist | Yes | Eating & Drinking Places | 3/30/2020 12:47 PM |
| 33 | Detailed Business Activity * | Picklist | Yes | Restaurant - Fast Food & Carry Out | 3/30/2020 12:47 PM |
| 34 | Number of Employees (As of January 31, 2020) * | Text | Yes | 112 | 3/30/2020 12:47 PM |
| | **PAGE 3** | | | | |
| HEADER: Business Owners Information | | | | | |
| 35 | Is Your Business Owned by a Business Entity? * | Radio | Yes | No | 3/30/2020 12:47 PM |

| | HEADER: Business Applicant Parent Entity | | | | |
|---|---|---|---|---|---|
| 36 | Legal Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 37 | Street Address * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 38 | City * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 39 | State * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 40 | EIN * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 41 | ZIP * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 42 | Business Phone * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 43 | Business Email * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 44 | Business Type * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 45 | Ownership Percent * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| | HEADER: Individual Owners | | | | |
| | HEADER: Owner 1 | | | | |
| 46-a | First Name * | Text | Yes | Leonard | 3/30/2020 12:47 PM |
| 47-a | Last Name * | Text | Yes | Vandenberg | 3/30/2020 12:47 PM |
| 48-a | Mobile Phone * | Text | Yes | ███████ | 3/30/2020 12:47 PM |
| 49-a | Title / Office * | Picklist | Yes | Owner | 3/30/2020 12:47 PM |
| 50-a | Ownership Percent * | Text | Yes | 50 | 3/30/2020 12:47 PM |
| 51-a | Email * | Text | Yes | | 3/30/2020 12:47 PM |
| 52-a | SSN * | Text | Yes | | 3/30/2020 12:47 PM |
| 53-a | Birth Date * | Date | Yes | | 3/30/2020 12:47 PM |
| 54-a | Place of Birth * | Text | Yes | | 3/30/2020 12:47 PM |
| 55-a | US Citizen * | Radio | Yes | | 3/30/2020 12:47 PM |
| 56-a | Residential Street Address * | Text | Yes | | 3/30/2020 12:47 PM |
| 57-a | City * | Text | Yes | | 3/30/2020 12:47 PM |
| 58-a | State * | Picklist | Yes | | 3/30/2020 12:47 PM |
| 59-a | ZIP * | Text | Yes | | 3/30/2020 12:47 PM |
| | HEADER: Owner 2 | | | | |
| 46-b | First Name * | Text | Yes | Christy | 3/30/2020 12:47 PM |
| 47-b | Last Name * | Text | Yes | Vandenberg | 3/30/2020 12:47 PM |
| 48-b | Mobile Phone * | Text | Yes | ███████ | 3/30/2020 12:47 PM |
| 49-b | Title / Office * | Picklist | Yes | Owner | 3/30/2020 12:47 PM |
| 50-b | Ownership Percent * | Text | Yes | 50 | 3/30/2020 12:47 PM |
| 51-b | Email * | Text | Yes | | 3/30/2020 12:47 PM |
| 52-b | SSN * | Text | Yes | | 3/30/2020 12:47 PM |
| 53-b | Birth Date * | Date | Yes | | 3/30/2020 12:47 PM |
| 54-b | Place of Birth * | Text | Yes | | 3/30/2020 12:47 PM |
| 55-b | US Citizen * | Radio | Yes | | 3/30/2020 12:47 PM |
| 56-b | Residential Street Address * | Text | Yes | | 3/30/2020 12:47 PM |
| 57-b | City * | Text | Yes | | 3/30/2020 12:47 PM |
| 58-b | State * | Picklist | Yes | | 3/30/2020 12:47 PM |
| 59-b | ZIP * | Text | Yes | | 3/30/2020 12:47 PM |
| | HEADER: Owner 3 | | | | |
| 46-c | First Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 47-c | Last Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 48-c | Mobile Phone * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 49-c | Title / Office * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 50-c | Ownership Percent * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 51-c | Email * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 52-c | SSN * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 53-c | Birth Date * | Date | Yes | NULL | 3/30/2020 12:47 PM |
| 54-c | Place of Birth * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 55-c | US Citizen * | Radio | Yes | NULL | 3/30/2020 12:47 PM |
| 56-c | Residential Street Address * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 57-c | City * | Text | Yes | NULL | 3/30/2020 12:47 PM |

| | | | | | |
|---|---|---|---|---|---|
| 58-c | State * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 59-c | ZIP * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| **HEADER: Owner 4** | | | | | |
| 46-d | First Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 47-d | Last Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 48-d | Mobile Phone * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 49-d | Title / Office * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 50-d | Ownership Percent * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 51-d | Email * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 52-d | SSN * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 53-d | Birth Date * | Date | Yes | NULL | 3/30/2020 12:47 PM |
| 54-d | Place of Birth * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 55-d | US Citizen * | Radio | Yes | NULL | 3/30/2020 12:47 PM |
| 56-d | Residential Street Address * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 57-d | City * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 58-d | State * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 59-d | ZIP * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| **HEADER: Owner 5** | | | | | |
| 46-e | First Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 47-e | Last Name * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 48-e | Mobile Phone * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 49-e | Title / Office * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 50-e | Ownership Percent * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 51-e | Email * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 52-e | SSN * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 53-e | Birth Date * | Date | Yes | NULL | 3/30/2020 12:47 PM |
| 54-e | Place of Birth * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 55-e | US Citizen * | Radio | Yes | NULL | 3/30/2020 12:47 PM |
| 56-e | Residential Street Address * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 57-e | City * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| 58-e | State * | Picklist | Yes | NULL | 3/30/2020 12:47 PM |
| 59-e | ZIP * | Text | Yes | NULL | 3/30/2020 12:47 PM |
| **PAGE 4** | | | | | |
| **HEADER: Additional Information** | | | | | |
| 60 | In the past year, has the business or a listed owner been convicted of a felony committed during and in connection with a riot or civil disorder or other declared disaster, or ever been engaged in the production or distribution of any product or service that has been determined to be obscene by a court of competent jurisdiction? * | Radio | Yes | No | 3/30/2020 12:47 PM |
| 61 | Is the applicant or any listed owner currently suspended or debarred from contracting with the Federal government or receiving Federal grants or loans? * | Radio | Yes | No | 3/30/2020 12:47 PM |
| 62 | a. Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? b. Have you been arrested in the past six months for any criminal offense? c. For any criminal offense - other than a minor vehicle violation - have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment)? * | Radio | Yes | No | 3/30/2020 12:47 PM |
| **HEADER: If anyone assisted you in completing this application, whether you pay a fee for this service or not, that person must enter their information below.** | | | | | |
| 63 | Individual Name | Text | No | NULL | 3/30/2020 12:47 PM |
| 64 | Name of Company | Text | No | NULL | 3/30/2020 12:47 PM |
| 65 | Phone Number | Text | No | NULL | 3/30/2020 12:47 PM |
| 66 | Street Address, City, State, ZIP | Text | No | NULL | 3/30/2020 12:47 PM |
| 67 | Fee Charged or Agreed Upon | Text | No | NULL | 3/30/2020 12:47 PM |
| 68 | I give permission for SBA to discuss any portion of this application with the representative listed above. * | Radio | Yes | No | 3/30/2020 12:47 PM |
| 69 | I would like to be considered for an advance of up to $10,000. | Checkbox* | No | 1 | 3/30/2020 12:47 PM |

| | | | | | |
|---|---|---|---|---|---|
| **HEADER: Where to Send Funds** | | | | | |
| 70 | Bank Name * | Text | Yes | James Polk Stone Community Bank | 3/30/2020 12:47 PM |
| 71 | Account Number * | Text | Yes | | 3/30/2020 12:47 PM |
| 72 | Routing Number * | Text | Yes | | 3/30/2020 12:47 PM |
| 73 | I hereby certify UNDER PENTALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES that the above is true and correct. ** | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| **PAGE 5** | | | | | |
| **HEADER: Summary** | | | | | |
| 74 | I'm not a robot * | Checkbox* | Yes | 1 | 3/30/2020 12:47 PM |
| 75 | Submit * | Button | Yes | 1 | 3/30/2020 12:47 PM |

\* Checkbox: 0 = unchecked, 1 = checked

\*\* The checkbox field "I hereby certify UNDER PENTALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES that the above is true and correct." is preceded by the following statement:

On behalf of the individual owners identified in this application and for the business applying for the loan:

I/We authorize my/your insurance company, bank, financial institution, or other creditors to release to SBA all records and information necessary to process this application and for the SBA to obtain credit information about the individuals completing this application.

If my/our loan is approved, additional information may be required prior to loan closing. I/We will be advised in writing what information will be required to obtain my/our loan funds. I/We hereby authorize the SBA to verify my/our past and present employment information and salary history as needed to process and service a disaster loan. I/We authorize SBA, as required by the Privacy Act, to release any information collected in connection with this application to Federal, state, local, tribal or nonprofit organizations (e.g. Red Cross Salvation Army, Mennonite Disaster Services, SBA Resource Partners) for the purpose of assisting me with my/our SBA application, evaluating eligibility for additional assistance, or notifying me of the availability of such assistance.

I /We will not exclude from participating in or deny the benefits of, or otherwise subject to discrimination under any program or activity for which I/we receive Federal financial assistance from SBA, any person on grounds of age, color, handicap, marital status, national origin, race, religion, or sex.

I/We will report to the SBA Office of the Inspector General, Washington, DC 20416, any Federal employee who offers, in return for compensation of any kind, to help get this loan approved. I/We have not paid anyone connected with the Federal government for help in getting this loan.

CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application, you certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future.

WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U S.C. 645, 18 U S.C. 1001, 18 U.S.C. 1014, 18 U S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

SBA Loan #8227677400                                                   Application #3600036687

# LOAN AUTHORIZATION AND AGREEMENT (LA&A)

### *A PROPERLY SIGNED DOCUMENT IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

**<u>CAREFULLY READ THE LA&A</u>:**

This document describes the terms and conditions of your loan. It is your responsibility to comply with <u>ALL</u> the terms and conditions of your loan.

---

**<u>SIGNING THE LA&A</u>:**

All borrowers must sign the LA&A.

- Sign your name *exactly* as it appears on the LA&A. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

*<u>Your signature represents your agreement to comply</u>*
*<u> with the terms and conditions of the loan.</u>*

SBA Loan #8227677400                                                     Application #3600036687

# U.S. Small Business Administration

Economic Injury Disaster Loan

# LOAN AUTHORIZATION AND AGREEMENT

Date: 05.18.2020 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (SBA Loan #8227677400) to Corclyn Enterprises Inc. (Borrower) of 405 W 4TH ST PORTALES New Mexico 88130 in the amount of one hundred and fifty thousand  and 00/100 Dollars ($150,000.00), upon the following conditions:

## PAYMENT

- Installment payments, including principal and interest, of $731.00 Monthly, will begin Twelve (12) months from the date of the promissory Note. The balance of principal and interest will be payable Thirty (30) years from the date of the promissory Note.

## INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

## PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

## COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations").  The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

SBA Loan #8227677400                                              Application #3600036687

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

- Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

SBA Form 1391 (5-00)                                                    Ref 50 30

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- Within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application. All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

SBA Loan #8227677400                                                    Application #3600036687

PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

RESOLUTION OF BOARD OF DIRECTORS

- Borrower shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

_James E. Rivera_

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

Corclyn Enterprises Inc.

DocuSigned by:

_Leonard Vandenberg_
A633CAF63789438...

Date:    05.18.2020

Leonard Vandenberg, Owner/Officer

Note: Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

SBA Form 1391 (5-00)                                                    Ref 50 30

# CERTIFICATION REGARDING LOBBYING

For loans over $150,000, Congress requires recipients to agree to
the following:

1.  Appropriated funds may NOT be used for lobbying.

2.  Payment of non-federal funds for lobbying must be reported on Form
    SF-LLL.

3.  Language of this certification must be incorporated into all
    contracts and subcontracts exceeding $100,000.

4.  All contractors and subcontractors with contracts exceeding
    $100,000 are required to certify and disclose accordingly.

SBA Form 1391 (5-00)

# CERTIFICATION REGARDING
# LOBBYING

*Certification for Contracts, Grants, Loans, and Cooperative*
*Agreements*

Borrower and all Guarantors (if any) certify, to the best of its, his or her knowledge and belief, that:

(1)    No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)    If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3)    The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and co-operative agreements) and that all sub-recipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000.00 and not more than $100,000.00 for each such failure.



This Statement of Policy is Posted

In Accordance with Regulations of the

# Small Business Administration

This Organization Practices

# Equal Employment Opportunity

**We do not discriminate on the ground of race, color, religion, sex, age, disability or national origin in the hiring, retention, or promotion of employees; nor in determining their rank, or the compensation or fringe benefits paid them.**

This Organization Practices

# Equal Treatment of Clients

**We do not discriminate on the basis of race, color, religion, sex, marital status, disability, age or national origin in services or accommodations offered or provided to our employees, clients or guests.**

**These policies and this notice comply with regulations of the United States Government.**

**Please report violations of this policy to:**

**Administrator
Small Business Administration
Washington, D.C. 20416**

In order for the public and your employees to know their rights under 13 C.F.R Parts 112, 113, and 117, Small Business Administration Regulations, and to conform with the directions of the Administrator of SBA, this poster must be displayed where it is clearly visible to employees, applicants for employment, and the public.

Failure to display the poster as required in accordance with SBA Regulations may be considered evidence of noncompliance and subject you to the penalties contained in those Regulations.

SBA FORM 722 (10-02) REF: SOP 9030    PREVIOUS EDITIONS ARE OBSOLETE        **U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346**

This form was electronically produced by Elite Federal Inc.

Federal Recycling Program        Printed on Recycled Paper



**Esta Declaración De Principios Se Publica**

**De Acuerdo Con Los Reglamentos De La**

Agencia Federal Para el Desarrollo de la Pequeña Empresa

**Esta Organización Practica**

# Igual Oportunidad De Empleo

**No discriminamos por razón de raza, color, religión, sexo, edad, discapacidad o nacionalidad en el empleo, retención o ascenso de personal ni en la determinación de sus posiciones, salarios o beneficios marginales.**

**Esta Organización Practica**

# Igualdad En El Trato A Su Clientela

**No discriminamos por razón de raza, color, religión, sexo, estado civil, edad, discapacidad o nacionalidad en los servicios o facilidades provistos para nuestros empleados, clientes o visitantes.**

**Estos principios y este aviso cumplen con los reglamentos del Gobierno de los Estados Unidos de América.**

**Favor de informar violaciones a lo aquí indicado a:**

**Administrador
Agencia Federal Para el Desarrollo de la
Pequeña Empresa
Washington, D.C. 20416**

**A fin de que el público y sus empleados conozcan sus derechos según lo expresado en las Secciones 112, 113 y 117 del Código de Regulaciaones Federales No. 13, de los Reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa y de acuerdo con las instrucciones del Administrador de dicha agencia, esta notificación debe fijarse en un lugar claramente visible para los empleados, solicitantes de empleo y público en general. No fijar esta notificación según lo requerido por los reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa, puede ser interpretado como evidencia de falta de cumplimiento de los mismos y conllevará la ejecución de los castigos impuestos en estos reglamentos.**

SBA FORM 722 (10-02) REF: SOP 9030     PREVIOUS EDITIONS ARE OBSOLETE          U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346

This form was electronically produced by Elite Federal Inc.

Federal Recycling Program          Printed on Recycled Paper

# NOTE

## *A PROPERLY SIGNED NOTE IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

<u>**CAREFULLY READ THE NOTE**</u>**:** It is your promise to repay the loan.

- The Note is pre-dated. **DO NOT CHANGE THE DATE OF THE NOTE.**
- <u>**LOAN PAYMENTS**</u> will be due as stated in the Note.
- **ANY CORRECTIONS OR UNAUTHORIZED MARKS MAY VOID THIS DOCUMENT.**

---

<u>**SIGNING THE NOTE**</u>**:** All borrowers must sign the Note.

- Sign your name *<u>exactly</u>* as it appears on the Note. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

SBA Loan #8227677400                                                           Application #3600036687



| | U.S. Small Business Administration | **Date: 05.18.2020** |
| | **NOTE** | **Loan Amount: $150,000.00** |
| | (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.75%** |

**SBA Loan # 8227677400**                                    **Application #3600036687**

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **one hundred and fifty thousand  and 00/100 Dollars ($150,000.00),** interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of this Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$731.00** every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor (if any); **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

SBA FORM 147 B (5-00)

SBA Loan #8227677400                                                         Application #3600036687

7. **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **GENERAL PROVISIONS: A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one- half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

Corclyn Enterprises Inc.

DocuSigned by:

*Leonard Vandenberg*

A033CAF63789438...

Leonard Vandenberg, Owner/Officer

SBA FORM 147 B (5-00)

SBA Loan #8227677400                                                  Application #3600036687

# <u>SECURITY AGREEMENT</u>

<u>Read this document carefully.</u> It grants the SBA a security interest (lien) in all the property described in paragraph 4.

This document is predated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.



# U.S. Small Business Administration
# SECURITY AGREEMENT

| SBA Loan #: | 8227677400 |
|---|---|
| Borrower: | Corclyn Enterprises Inc. |
| Secured Party: | **The Small Business Administration, an Agency of the U.S. Government** |
| Date: | 05.18.2020 |
| Note Amount: | $150,000.00 |

1.    **DEFINITIONS.**

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.    **GRANT OF SECURITY INTEREST.**

For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.    **OBLIGATIONS SECURED**.

This Agreement secures the payment and performance of: (a) all obligations under a Note dated 05.18.2020, made by Corclyn Enterprises Inc. , made payable to Secured Lender, in the amount of  $150,000.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.    **COLLATERAL DESCRIPTION.**

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

Page 2 of 5

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5. **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6. **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7. **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8. **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

SBA Loan #8227677400                                                           Application #3600036687

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9. **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10. **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12. **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13. **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Form 1059 (09-19) Previous Editions are obsolete.

SBA Loan #8227677400                                                      Application #3600036687

14.    **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15.    **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.

**Corclyn Enterprises Inc.**

DocuSigned by:

*Leonard Vandenberg*

A633CAF03789438...

Date:    05.18.2020

Leonard Vandenberg, Owner/Officer

SBA Form 1059 (09-19) Previous Editions are obsolete.